MARY McCOY, Special Adm'r of the Estate of Arthur James Matthews, Deceased, Plaintiff-Appellant, v. ILLINOIS INTERNATIONAL PORT DISTRICT, a/k/a and/or f/k/a Chicago Regional Port District, Defendants-Appellee (Kaptanaglu Group of Companies *et al.*, Defendants).

First District (5th Division)    No. 1—01—0488

Opinion filed September 30, 2002.

John C. Mullen, of Mullen & Minella, and Suzanne H. Dvorak, of Katz, Friedman, Eagle, Eisenstein & Johnson, Chtrd., both of Chicago, for appellant.

Michael J. Charysh and Bradford A. Burton, both of Charysh & Schroeder, Ltd., of Chicago, for appellee.

JUSTICE REID delivered the opinion of the court:

Following the dismissal of count III of the fourth amended complaint sounding in negligence and count III of the fifth amended complaint sounding in breach of contract, and the denial of a motion to amend the pleadings to include a claim of unconstitutionality, Mary McCoy filed this appeal. This case involves the injury and resulting drowning death of Arthur James Matthews.

## BACKGROUND

Arthur Matthews was a longshoreman working for Ceres Terminals, Inc. (Ceres), at the Iroquois Landing in the Port of Chicago. Ceres, for decades prior to the incident, had a contract with the Illinois International Port District (Port District) to provide stevedoring and longshoring (also referred to as "terminalling") for ships coming into the port. A stevedore is one who is employed in the loading or unloading of ships. The contract provides that, since there was no transfer of property to Ceres, the Port District retained overall control and possession of the property at the Iroquois Landing. It also specifically stated that it was the duty of the Port District to "provide and maintain in good order and repair for the use intended the dock, wharf and open land."

On September 25, 1998, as part of his employment, Matthews was assisting in the untying of a docked vessel. While working, Matthews fell into the Calumet River where he drowned.

Photographs taken by the Occupational Safety and Health Agency (OSHA) showed that the concrete area on which Matthews was required to work was crumbled and dilapidated. According to testimony of the executive director of the Port District, the dock had not been repaired in at least 15 years prior to the injury.

The Port District operates its business on the bodies of water, including the Calumet River, surrounding the Port of Chicago. It also provides boat tours, arguably as a way of soliciting shipping business. The Port District, pursuant to statute, is responsible for the maintenance of the facilities on the properties near the water. It also collects fees for use of the port facilities and can supply fresh water to the shipping vessels that dock while doing business.

Mary McCoy, on Matthews' behalf, sued the Port District for negligence, claiming that it failed to maintain the property in question, specifically the sea/dock wall from where Matthews fell. The trial court dismissed the action on the basis that the Port District was immune from liability pursuant to section 3—110 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3—110 (West 1998)).

A third amended complaint was filed on September 24, 1999. The only count in the third amended complaint was based on a theory of negligence. The Port District responded to the third amended complaint with a motion to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—619 (West 1998). Again, the Port District argued that it was immune from liability under the Tort Immunity Act. 745 ILCS 10/1—101 *et seq.* (West 1998). The Port District argued its statutory immunity prevented it from being found liable for Matthews' death because it did not own, supervise, maintain, operate, manage or control Lake Michigan, where McCoy claimed in the third amended complaint that the drowning occurred.

On December 21, 1999, McCoy filed a fourth amended complaint. This time the complaint alleged a theory of negligence that was essentially the same as the third amended complaint, with the exception that the plaintiff now claimed the Port District owned the dock adjacent to the Calumet River and that Matthews died in the Calumet River and not Lake Michigan. The trial court dismissed the fourth amended complaint on January 28, 2000, for the same reasons it dismissed the previous complaint. A motion to reconsider and an amended motion to reconsider were subsequently filed. In those motions, McCoy also argued for leave to plead that section 3—110 was unconstitutional. The trial court granted leave to file the portion of the proposed fifth amended complaint that alleged the breach of contract claim. McCoy was also granted leave to include the previously dismissed negligence count, which remained subject to the court's dismissal on January 28, 2000, and McCoy's then-pending amended motion to reconsider. McCoy's motion to add a count for injunctive/ declaratory relief and motion to amend the dismissed negligence count were continued to September 8, 2000, the date of the hearing on that amended motion to reconsider.

On September 8, 2000, the trial court denied the amended motion to reconsider and dismissed the negligence count against the Port District. The trial court also denied leave to amend the fifth amended complaint to include the count claiming section 3—110 is unconstitutional.

On September 29, 2000, the Port District filed a motion to dismiss the breach of contract claim against it in the fifth amended complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—615 (West 2000). The basis of this motion was that there were no specific provisions in the license agreement between the Port District and Ceres identifying McCoy or Matthews as a third-party beneficiary to the contract between them. The trial court dismissed the breach of contract claim for the reasons presented by the Port

District. To that order, the trial court added language of appealability from Illinois Supreme Court Rule 304(a). 155 Ill. 2d R. 304(a). For the following reasons, we affirm the decision of the trial court.

## STANDARD OF REVIEW

■ The trial court dismissed the relevant portions of the complaints at issue pursuant to sections 2—615 and 2—619 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—615, 2—619 (West 2000). A section 2—615 motion to dismiss challenges the legal sufficiency of a complaint. *Haddick v. Valor Insurance*, 198 Ill. 2d 409, 413-14 (2001). "Upon review, all well-pleaded facts in the complaint are taken as true. Facts apparent from the face of the pleadings, including the exhibits attached thereto, may be considered." *Haddick*, 198 Ill. 2d at 414, citing *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 491-92 (1999). The purpose of a motion to dismiss under section 2—619 is to provide litigants with a method for disposing of issues of law and easily proved issues of fact at the beginning of a case, reserving disputed questions of fact for a trial, if necessary. *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 109 (1999), citing *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). The question on appeal from an order granting dismissal under section 2—619 is " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Doyle*, 186 Ill. 2d at 109-10, quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). Our review of a trial court order granting a motion to dismiss is *de novo*. *Beetle v. Wal-Mart Associates, Inc.*, 326 Ill. App. 3d 528, 531 (2001), citing *Greb v. Forest Preserve District*, 323 Ill. App. 3d 461, 463 (2001).

## ANALYSIS

McCoy argues that section 3—110 of the Tort Immunity Act should not apply where the Port District performs some maintenance, control, supervision and management of the Calumet River, and that the negligence action should not have been dismissed based on immunity. McCoy argues that the Port District is a local public entity. While it is not the "owner" of the Calumet River where Matthews died, the Port District plays a role in the maintenance, control, supervision and management of the river by conducting business on the river and through its responsibility for the sea walls that contain the river. McCoy claims it is hard to imagine that the Port District could claim to have no such functions regarding the waters of the Port of Chicago. She argues that, if the entity has some maintenance, control, supervision and management of the waterway, then the immunity does not apply. The amount of maintenance, control, supervision and manage-

ment is not an element of interpreting the statute. She also argues that while the Illinois International Port District Act (70 ILCS 1810/1 *et seq.* (West 2000)) does not define harbors, the term has been defined in other Illinois statutes to refer only to the water area and not the adjacent lands. McCoy directs our attention to that portion of the Lake Calumet Harbor Act (615 ILCS 65/2 (West 2000)) she argues is applicable.

The Port District responds that it does not own, supervise, maintain, operate, manage or control the Calumet River where the drowning took place. As a municipal corporation, the Port District is entitled to certain immunities and defenses under the Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 2000)). The Port District seeks to promote its business, collect a fee, or provide drinking water for ships, and this in no way demonstrates that the Port District maintains, controls, supervises or manages the Calumet River. Maintaining a wall does not constitute maintenance of the river. The rights extended by the Illinois International Port District Act provide the Port District with the ability to do certain things with respect to land-based facilities, such as own, construct, develop, improve, and maintain these facilities. The Port District also argues that Lake Calumet Harbor is distinct from the Calumet River, such that the Lake Calumet Harbor Act does not apply. The Port District further argues that the plain language of section 3—110 is brief, clear and unambiguous. The immunity applies to this decedent and these facts.

■ The trial court found that the Port District was immune from liability for its alleged negligence pursuant to statute. 745 ILCS 10/3—110 (West 2000). We agree. The issues raised in this case are issues of statutory construction. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Beetle*, 326 Ill. App. 3d at 531-32, citing *People v. Owens*, 323 Ill. App. 3d 222, 228 (2001). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Lauer v. American Family Life Insurance Co.*, 199 Ill. 2d 384, 388 (2002), citing *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). " 'Generally, courts give a great deal of deference to an agency's interpretation of a statute which it is charged with administering [citations]. However, an agency's interpretation is not binding and will be rejected if erroneous [citations].' " *Taylor v. Cook County Sheriff's Merit Board*, 316 Ill. App. 3d 574, 579 (2000), quoting *Denton v. Civil Services Comm'n*, 277 Ill. App. 3d 770, 774 (1996).

■ The Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 2000)), in relevant part, discusses the rights, duties and immunity of the Port District in detail. Section 3—110 of the Tort Immunity Act provides:

"Neither a local public entity nor a public employee is liable for any injury occurring on, in, or adjacent to any waterway, lake, pond, river or stream not owned, supervised, maintained, operated, managed or controlled by the local public entity." 745 ILCS 10/3—110 (West 2000).

■ The Illinois International Port District Act provides, in relevant part, as follows:

"It shall be the duty of the Port District:

\* \* \*

(h) To perform any other act or function which may tend to or be useful toward development and improvement of harbors, sea ports, and port-related facilities and services and to increase foreign and domestic commerce through the harbors and ports within the City of Chicago." 70 ILCS 1810/4 (h) (West 2000).

■ The plain language of section 3—110 of the Tort Immunity Act is unambiguous. If the local public entity or public employee does not own, supervise, maintain, operate, manage or control the waterway, lake, pond, river or stream, there is no liability for any injury occurring on, in, or adjacent to that waterway. Because the Port District is a creation of statutes, rules and regulations, its operational parameters are both defined and limited by those statutes, rules and regulations. It is there that we must look for guidance. The Illinois International Port District Act defines the Port District's duties as follows:

"§ 5. The Port District shall have the following rights and powers:

\* \* \*

(e) To acquire, own, construct, sell, lease, operate, and maintain port and harbor, water, and land terminal facilities, and, subject to the provisions of Section 5.01 to operate or contract for the operation of such facilities, and to fix and collect just, reasonable and non-discriminatory charges, rentals or fees for the use of such facilities. The charges, rentals or fees so collected shall be made available to defray the reasonable expenses of the Port District and to pay the principal of and interest on any revenue bonds issued by the District[.]" 70 ILCS 1810/5(e) (West 2000).

■ The trial court found that Arthur James Matthews died by drowning in the Calumet River and that said river was not owned, supervised, maintained, operated, managed or controlled by the Port District. While the scope of the International Port District Act is detailed, it does not extend beyond the maintenance of port, harbor, and water and land terminal *facilities* to control of the waterways themselves. In light of that ruling, the trial court dismissed the negligence count against the Port District. We can find no basis for disturbing that judgment.

McCoy next argues that the Port District is liable under a breach of contract theory for its failure to maintain the property in question pursuant to a license agreement between Ceres Terminals and the Port District. Pursuant to this license agreement, Ceres would operate stevedoring and longshoring for the ships that use the port and its facilities. McCoy argues that Matthews was a third-party beneficiary to the contract because he was part of the group of intended users of the property. McCoy argues that Matthews did not have to be specifically named in the contract to qualify as a third-party beneficiary. McCoy argues that the only reason to maintain the facilities was to make it possible for Ceres' employees to carry out their duties, thereby making it possible for Ceres to live up to its contractual obligations.

The Port District disagrees, arguing that the contract between it and Ceres was to meet the terminalling, stevedoring and other needs of the shippers. It argues that, to qualify as a third-party beneficiary, the actual parties to the contract must specifically intend that the contract directly benefit the third party in question. Here, the Port District argues that the contract makes no reference to Matthews or any longshoremen. The license agreement deals solely with the rights, duties, and responsibilities of the Port District and Ceres. Accordingly, the Port District argues, it fails to contain an express declaration that anyone has third-party beneficiary status. The trial court agreed with the Port District on this point and dismissed the breach of contract claim against it. We agree.

■ Like our supreme court in *Olson v. Etheridge*, 177 Ill. 2d 396, 404 (1997), we begin by briefly summarizing third-party beneficiary law.

"The well-established rule in Illinois is that if a contract is entered into for the direct benefit of a third person, the third person may sue for a breach of the contract in his or her own name, even though the third person is a stranger to the contract and the consideration. *Joslyn v. Joslyn*, 386 Ill. 387, 400 (1944); *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257 (1931). This principle of law is widely accepted throughout the United States, because allowing a third-party beneficiary to sue the promisor directly is said to be manifestly just and practical. See 17A Am. Jur. 2d *Contracts* §§ 435, 437 (2d ed. 1991). In cases such as this one, it increases judicial efficiency by removing the privity requirement, under which the beneficiary must sue the promisee, who then in turn must sue the promisor."

"In Illinois, the promisor's intention must be evidenced by an express provision in the contract identifying the third-party beneficiary." *A.J. Maggio Co. v. Willis*, 316 Ill. App. 3d 1043, 1051 (2000),

citing *Wheeling Trust & Savings Bank v. Tremco, Inc.*, 153 Ill. App. 3d 136, 140 (1987). Whether a party is a third-party beneficiary depends on the intent of the contracting parties and is determined on a case-by-case basis. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 200 (1999), citing *Midwest Concrete Products Co. v. La Salle National Bank*, 94 Ill. App. 3d 394, 396 (1981). " 'In making this determination, it must appear from the language of the contract when properly construed that the contract was made for the direct benefit of the third person and that the benefit was not merely incidental.' " (Emphasis omitted.) *Gallagher*, 309 Ill. App. 3d at 200, quoting *Midwest Concrete Products*, 94 Ill. App. 3d at 396. There is a strong presumption that the parties to a contract intend the provisions of that contract to apply only to them and not to third parties. *Reid v. Wells*, 308 Ill. App. 3d 831, 834 (1999), citing *Barney v. Unity Paving, Inc.*, 266 Ill. App. 3d 13 (1994). In order for a plaintiff third party to have standing to sue under a contract, the contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear. *Reid*, 308 Ill. App. 3d at 834-35, citing *Caswell v. Zoya International, Inc.*, 274 Ill. App. 3d 1072 (1995). "Liability to a third party must affirmatively appear from the contract's language and from the circumstances surrounding the parties at the time of its execution and cannot be expanded or enlarged simply because the situation and circumstances justify or demand further or other liability." *A.J. Maggio*, 316 Ill. App. 3d at 1051, citing *Ball Corp. v. Bohlin Building Corp.*, 187 Ill. App. 3d 175, 177 (1989).

■ While McCoy argues that the contract dictates that the subject property would be maintained for the use intended, and that the only reason to maintain the dock area is for the direct benefit of the person performing stevedoring and longshoring activities thereupon, the license agreement makes no reference to the decedent or any other longshoremen. We can find no justifiable basis for overturning the trial court's decision.

Finally, McCoy argues that section 3—110 of the Tort Immunity Act is unconstitutional. McCoy argues that the amendments to section 3—110 create an arbitrary barrier to certain injured people who have meritorious claims, preventing them from filing their claims and obtaining full compensation, regardless of what the evidence might show.

The Port District responds that the trial court did not abuse its discretion in refusing to allow McCoy to amend her complaint by adding a count for injunctive/declaratory relief challenging the constitutionality of the statute. The Port District argues that McCoy did not raise this issue until long after the primary negligence count had been

dismissed. There is no evidence in the record to suggest that the trial court abused its discretion in denying the motion. The Port District also argues that section 3—110 does not constitute special legislation because it provides the same immunity to all municipal corporations.

■ The circuit court's decision to deny leave to amend pleadings is a matter of discretion and will not be reversed absent an abuse of discretion. *Casualty Insurance Co. v. Hill Mechanical Group*, 323 Ill. App. 3d 1028, 1037 (2001), citing *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263 (1992). In Illinois, courts are encouraged to freely and liberally allow the amendment of pleadings. *In re Liquidation of Inter-American Insurance Co. of Illinois*, 329 Ill. App. 3d 606, 617-18 (2002), citing *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d 171, 179 (1997). To determine whether the circuit court abused its discretion, four factors are considered: (1) whether the proposed amendment is timely; (2) whether previous opportunities to amend the pleading can be identified; (3) whether other parties will sustain prejudice or surprise by virtue of the proposed amendment; and (4) whether the proposed amendment will cure the defective pleading. *Inter-American*, 329 Ill. App. 3d at 618, citing *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d at 179.

■ We cannot agree with McCoy on the issue of the alleged unconstitutionality of section 3—110. In order to accept the claim that the statute violates the special legislation clause of the Illinois Constitution, we would have to equate public entities near bodies of water with those that are landlocked. While it would be possible to conjure up different groupings that might give the appearance of being special classes, such groupings are not reasonable under the circumstances. Like all legislation, the sections of the Tort Immunity Act were created to address certain persons, groups and situations. In this case, section 3—110 deals with immunity in the context of local public entities near waterways. Our reading of the statute indicates that all municipalities near the water are treated in the same manner. It is therefore not improper for the trial court to have declined to allow the pleadings to be amended so as to include plaintiff's constitutionality argument. We decline to overturn the trial court's decision on this issue.

## CONCLUSION

In light of the foregoing, the decision of the trial court is affirmed.

Affirmed.

CAMPBELL, P.J., and QUINN, J., concur.