RANDALL HALL, Plaintiff-Appellant, v. JOYCE A. FLOWERS et al., Defendants-Appellees.

Fourth District No. 4—03—0006

Argued June 18, 2003.—Opinion filed September 25, 2003.—Rehearing denied November 18, 2003.

Daniel C. Jones (argued), of Hefner, Eberspacher & Tapella, of Mattoon, for appellant.

Stephen R. Swofford, Kevin M. Miller, and Timothy G. Shelton (argued), all of Hinshaw & Culbertson, of Chicago, for appellees.

JUSTICE COOK delivered the opinion of the court:

Plaintiff, Randall Hall, appeals the July 31, 2002, order of the Coles County circuit court denying plaintiff's motion for a protective order to prevent defense counsel from communicating *ex parte* with Dr. Gaylin Lack, one of plaintiff's treating physicians. Plaintiff also appeals the September 24, 2002, order of the court granting defendants' motion for summary judgment on the issue of causation. We affirm.

## I. BACKGROUND

On October 27, 2000, plaintiff filed a complaint, alleging that he was entitled to damages sustained from the negligent administration of an intravenous pyelogram (IVP) performed by defendant Joyce A. Flowers, a radiological technologist, on October 30, 1998, at defendant Sarah Bush Lincoln Health Center (Sarah Bush). An IVP involves the intravenous injection (IV) of water-soluble contrast material. The contrast material collects in the kidneys for the purpose of performing an X ray. Flowers admitted in her deposition that when conducting the IVP procedure on plaintiff's right arm, she penetrated plaintiff's vein, allowing contrast material to seep into the surrounding tissues. She testified that plaintiff's right arm was not discolored, did not

blister, but was slightly swollen. Plaintiff testified in his deposition that he remembered a strong metallic taste with the initial injection of contrast material. He felt a ripping sensation in his right arm, and he experienced a numbing and tingling sensation in his right hand. An X ray of plaintiff's right arm indicated complete extravasation, or escape, of the contrast material into the arm. An IVP was then successfully performed on plaintiff's left arm.

The day after the IVP procedure, plaintiff experienced soreness and a lack of sensation in his right hand. He sought care from Sarah Bush's emergency department. Plaintiff was told to stay off work and follow up with Dr. Mark Dettro, plaintiff's family practice physician.

Dr. Gaylin Lack is an orthopedic surgeon practicing medicine in Coles County. Dr. Lack has been a member of Sarah Bush's active medical staff, that is, he has had medical privileges, since 1980. In April 2001, Dr. Lack became an employee of Sarah Bush.

Dr. Lack treated plaintiff's complaints of soreness and lack of sensation in his right arm from February 2000 through March 2001. On June 9, 2000, Dr. Lack performed surgery on plaintiff's right arm at Sarah Bush. During Dr. Lack's first consultation with plaintiff, on February 24, 2000, Dr. Lack wrote in his physician's notes that plaintiff's carpal tunnel syndrome may have been based on a "double crush syndrome." In his physician's notes of November 9, 2000, Dr. Lack wrote, "I believe that we may be dealing with a double crush type of problem with an irritation or some [type] of persistent injury to the brachial plexus or some of the nerves proximally in the arm as a result of the extravasation of the contrast material that was injected when he had the IVP."

Plaintiff's attorney attached his affidavit to the complaint, as required by section 2—622 of the Code of Civil Procedure. 735 ILCS 5/2—622(a)(1) (West 2000). The report of a board-certified radiologist, Dr. Jeffrey Dach, was also attached to the complaint. Dr. Dach's report stated that in his opinion, "based upon the review of the records, it appears that the IV contrast extravasation into the patient's arm may have caused significant injury to the arm."

The court's case-management order directed plaintiff to disclose opinion witnesses by October 1, 2001. That order was extended twice. On June 3, 2001, plaintiff filed a third motion for an extension of time to disclose witnesses. The next day, defendants filed a motion for summary judgment. Apparently on June 21, 2002, plaintiff disclosed Dr. Lack as an independent expert witness. See 177 Ill. 2d R. 213(f) (eff. May 1, 1997). Plaintiff was given 30 days to take Dr. Lack's deposition. On July 15, 2002, plaintiff filed a motion to extend the time for taking Dr. Lack's deposition to August 20, 2002, and a request for a

protective order to prohibit *ex parte* communications between defense counsel and Dr. Lack. The request for a protective order was denied July 31, 2002.

During his deposition, August 20, 2002, Dr. Lack testified he had two *ex parte* conversations with defense counsel about his treatment of plaintiff. The first of these conversations probably took place sometime in 2002, after he had stopped treating plaintiff, and after he had become an employee of the hospital. During this conversation, they examined records counsel had received from other physicians, specifically Dr. Dettro, and they discussed plaintiff's condition. The second such conversation took place immediately before Dr. Lack's discovery deposition.

During his deposition, Dr. Lack testified that he could not say to a reasonable degree of medical certainty that the IVP procedure could have been the cause of plaintiff's problems. Dr. Lack testified he rejected that possibility after review of the chart, "recollection of instances when we've had other people with extravasation of contrast material in the soft tissues without any significant long-term complication," talking with defense counsel, and looking at Dr. Dettro's records, which indicated plaintiff had recovered from the extravasation and then began to have more complaints after he returned to work.

On September 24, 2002, the trial court granted defendants' motion for summary judgment and on December 3, 2002, denied plaintiff's motion to reconsider. This appeal followed.

## II. ANALYSIS

■ Plaintiff argues that the trial court abused its discretion by denying plaintiff's request for a protective order to prohibit *ex parte* communications between Sarah Bush's defense counsel and plaintiff's treating physician, Dr. Lack. Plaintiff relies on the doctrine set forth in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 499 N.E.2d 952 (1986). The *Petrillo* doctrine forbids *ex parte* communications between defense counsel and a plaintiff's treating physician because these conferences jeopardize the sanctity of the physician-patient relationship and are prohibited as against public policy. *Petrillo*, 148 Ill. App. 3d at 588, 499 N.E.2d at 957.

Plaintiff's reliance on *Petrillo* is misplaced. In *Petrillo*, the defense attorney for Syntex Laboratories appealed the trial court's order finding him in contempt of court for failing to comply with the court's order barring him from engaging in private, *ex parte* communications with plaintiff's treating physician in connection with plaintiff's products liability action. The *Petrillo* court affirmed the trial court and concluded that defense counsel could communicate with plaintiff's

treating physician only through court-approved discovery methods. The court was concerned with the situation where "the physician divulges to a *third party* information which the patient originally disclosed to the physician with the belief that the information would remain confidential unless the patient gave his consent otherwise." (Emphasis added.) *Petrillo*, 148 Ill. App. 3d at 591, 499 N.E.2d at 959.

■ The Hospital Licensing Act (Act) (210 ILCS 85/6.17(b), (d), (e) (West 2000)) carves out an exception to the *Petrillo* doctrine. Where a patient institutes a legal action against a hospital, "[t]he hospital is not a third party with respect to its own medical information, which is compiled by the hospital's own caregivers." *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 57, 759 N.E.2d 533, 555 (2001) (upholding the constitutionality of subsections 6.17(d) and (e) of the Act). The clear and unambiguous language of sections 6.17(b), (d), and (e) of the Act permits limited *ex parte* communications between a hospital's defense counsel and plaintiff's treating physician. 210 ILCS 85/6.17(b), (d), (e) (West 2000); *In re Medical Malpractice Cases Pending in the Law Division*, 337 Ill. App. 3d 1016, 1025, 787 N.E.2d 237, 244 (2003). Subsection (b) states that "[a]ll information regarding a hospital patient gathered by the hospital's medical staff and its agents and employees shall be the property and responsibility of the hospital." 210 ILCS 85/6.17(b) (West 2000). Subsection (d) allows members of a hospital's medical staff, its agents, and employees to disclose the nature or details of services provided to patients to those parties responsible for "peer review, utilization review, quality assurance, risk management[,] or *defense of claims* brought against the hospital arising out of the care." (Emphasis added.) 210 ILCS 85/6.17(d) (West 2000); *In re Medical Malpractice Cases Pending in the Law Division*, 337 Ill. App. 3d at 1022, 787 N.E.2d at 241-42. Subsection (e) states that the hospital's medical staff members, its agents, and employees "may communicate, at any time and in any fashion, with legal counsel for the hospital concerning *** any care or treatment they provided or assisted in providing to any patient within the scope of their employment or affiliation with the hospital." 210 ILCS 85/6.17(e) (West 2000).

In *dicta*, the *Burger* court interpreted these subsections to allow communications between hospital defense counsel and treating physicians so long as (1) the communications are strictly limited to the intrahospital setting, (2) there is no disclosure of a patient's medical information to outside third parties, (3) the communications are narrowly circumscribed to include only medical care and treatment rendered to the patient at the hospital, by the hospital's own medical staff agents or employees, and (4) the communications involve only information already known to the hospital by virtue of subsection (b). *Burger*, 198 Ill. 2d at 54-55, 759 N.E.2d at 553.

■ Plaintiff argues that Dr. Lack was a third party and not a member of the medical staff, an agent, or employee when he treated plaintiff for the alleged injury to his right arm. Dr. Lack testified that he became affiliated with Sarah Bush in 1980 as a member of the medical staff and became an employee in April 2001. As a member of the medical staff he was entitled to "practice orthopedics and orthopedic surgery. It required coverage of call in the emergency room, as well as giving [him] the privilege to admit patients to the hospital, use of surgical and ancillary services." He testified that his affiliation with Sarah Bush before 2001 is commonly referred to as having "privileges" at the hospital. Regulations to the Act define "medical staff" as an organized body composed of the appropriately licensed individuals granted the privilege by the governing authority of the hospital to practice in the hospital. 77 Ill. Adm. Code 250.150 (Conway Greene CD-Rom March 2002). Plaintiff was a patient of Dr. Lack from February 2000 through March 2001, while Dr. Lack was a member of Sarah Bush's medical staff. On June 9, 2000, Dr. Lack performed surgery on plaintiff at Sarah Bush to treat symptoms related to this litigation. The *ex parte* communications took place after Dr. Lack became an employee of Sarah Bush.

Next, plaintiff argues that the *ex parte* communications were not authorized by the Act because they concerned treatment rendered outside of the intrahospital setting. We disagree. On June 9, 2000, Dr. Lack performed surgery on plaintiff at Sarah Bush to alleviate plaintiff's symptoms in his right arm. The communications at bar involved Dr. Lack's treatment of plaintiff's right arm and his opinion on the issue of the causation of plaintiff's symptoms. It is true that Dr. Lack treated plaintiff from February 2000 until the June 9, 2000, surgery, without any involvement of Sarah Bush. Perhaps the mere fact that Dr. Lack had privileges at Sarah Bush would not have entitled Sarah Bush's attorneys to communicate with Dr. Lack regarding that treatment, if there was nothing more to it. However, the fact that Dr. Lack did surgery on plaintiff on June 9, 2000, at Sarah Bush, changes the picture. Sarah Bush was entitled to know everything Dr. Lack knew about that surgery, including information he acquired leading up to the surgery. "All information regarding a hospital patient gathered by the hospital's medical staff and its agents and employees shall be the property and responsibility of the hospital ***." 210 ILCS 85/6.17(b) (West 2000). "[I]t follows from subsection (b) that any information known by any hospital care-giver with respect to a patient's care at that hospital is *hospital* information." (Emphasis in original.) *Burger*, 198 Ill. 2d at 41-42, 759 N.E.2d at 546.

The purpose of the Act "is to provide for the better protection of

the public health through the development, establishment, and enforcement of standards *** for the care of individuals in hospitals." 210 ILCS 85/2(a) (West 2000). A limited intrahospital exchange of information is beneficial to the general health and welfare of the public. *Burger*, 198 Ill. 2d at 41, 759 N.E.2d at 546. The *Burger* court found that "communication of a patient's medical information to legal counsel or risk[-]management personnel may be necessary in order not only to adequately and appropriately respond to the occurrence, but also to prevent any similar adverse occurrence in the future." *Burger*, 198 Ill. 2d at 43, 759 N.E.2d at 547. The court listed other legitimate reasons for communicating information that are separate and apart from litigation but concluded that the filing of a lawsuit does not affect the hospital's right to access its own information. *Burger*, 198 Ill. 2d at 58, 759 N.E.2d at 555. Determining the effects of extravasation following an IVP performed at Sarah Bush is certainly an appropriate response to the occurrence and within the scope of preventative practice.

## B. Summary Judgment

Plaintiff argues that the trial court erred in granting defendants' motion for summary judgment because a genuine issue of material fact as to causation remains.

■ When reviewing a trial court's grant of summary judgment, this court liberally considers the affidavits, depositions, admissions, exhibits, and pleadings in the record *de novo* and in a light most favorable to the nonmoving party. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113, 649 N.E.2d 1323, 1326 (1995). Summary judgment is a drastic means of disposing of litigation and is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Espinoza*, 165 Ill. 2d at 113, 649 N.E.2d at 1326. On a motion for summary judgment it is the movant who bears the burden of persuasion and the initial burden of production. Where a defendant is the movant, it is only when the defendant satisfies its initial burden of production that the burden shifts to the plaintiff to present some factual basis that would arguably entitle him to a judgment under the applicable law. *Wortel v. Somerset Industries, Inc.*, 331 Ill. App. 3d 895, 900, 770 N.E.2d 1211, 1214 (2002); *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 689, 737 N.E.2d 662, 668 (2000). A defendant who moves for summary judgment may meet the initial burden of production either: (1) by affirmatively showing that some element of the cause of action must be resolved in defendant's favor; or (2) by demonstrating that plaintiff cannot produce evidence necessary to support the plaintiff's

cause of action. *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 641, 784 N.E.2d 258, 265 (2002). Only if defendants satisfy their initial burden of production does the burden shift to plaintiffs to present some factual basis that would arguably entitle them to a favorable judgment. *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 805, 690 N.E.2d 1067, 1070 (1998).

■ Where plaintiff in a medical malpractice case is unable to procure the necessary expert testimony, summary judgment for the defendant is appropriate. *Stevenson v. Nauton*, 71 Ill. App. 3d 831, 835, 390 N.E.2d 53, 57 (1979). The basis for such a summary judgment is that plaintiff is unable to procure an expert. Where plaintiff indicates that he will be able to obtain an expert, he must be given every opportunity to do so. See *Stevenson*, 71 Ill. App. 3d at 835, 390 N.E.2d at 56; *Addison v. Whittenberg*, 124 Ill. 2d 287, 295-96, 529 N.E.2d 552, 556 (1988) (refusing to uphold summary judgment on the basis that the Rule 220 deadline had passed (see 134 Ill. 2d R. 220 (repealed))). Of course, the trial court is not required to accept a plaintiff's promise that an expert will be forthcoming and may set a deadline for production. The basis for the summary judgment, however, is the trial court's determination that no expert will be produced.

■ The trial court held that plaintiff failed to present evidence that his injuries were caused by Flowers's negligence in performing the IVP. To prove this element, plaintiff proffered the notes and deposition testimony of Dr. Lack. Dr. Lack admitted and his physician's notes indicate that at the time he treated plaintiff, Dr. Lack entertained the possibility that plaintiff's physical complaints were caused by Flowers's alleged negligence. Dr. Lack, however, testified in his deposition that he did not believe, to a reasonable degree of medical certainty, that the IVP procedure could have been the cause of plaintiff's problems. Dr. Dettro also testified with a reasonable degree of medical certainty that plaintiff's symptoms are more likely caused by plaintiff's employment rather than from infiltration during the IVP procedure.

Plaintiff argues there is a material issue because Dr. Lack allegedly changed his opinion as to causation after plaintiff filed the lawsuit and after his *ex parte* conversations with defense counsel. In his discovery deposition, Dr. Lack indicated he did not change his mind as to causation because he had not previously formed an opinion as to whether the IVP procedure contributed to plaintiff's symptoms. Dr. Lack formed his opinion after his treatment of plaintiff and after gleaning new information, some of which was learned before Dr. Lack became an employee of Sarah Bush. Plaintiff failed to produce any expert opinion showing the IVP procedure caused plaintiff's symptoms

in his right arm despite the trial judge's repeated extension of witness-disclosure deadlines giving plaintiff ample opportunity to support the causation element of his claim. Summary judgment is appropriate.

## III. CONCLUSION

Defense counsel's limited, *ex parte* communications with plaintiff's treating physician, Dr. Lack, were permitted by the Act. The trial court's denial of plaintiff's protective order was not an abuse of discretion. Defendants demonstrated that plaintiff cannot produce an expert. The trial court properly granted defendants' motion for summary judgment. We affirm.

Affirmed.

KNECHT and TURNER, JJ., concur.