No. 3--04--0860 

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2005

DEBORAH FRAYNE, Special       ) Appeal from the Circuit Court

Administrator of the Estate ) of the 13th Judicial Circuit,  

of Kenneth J. Frayne,         ) Grundy County, Illinois     

Deceased,   )    

                             )      

Plaintiff-Appellant,    )

)

v. ) No.  03--L--20 

)

DACOR CORPORATION, MINOOKA    )   

FIRE PROTECTION DISTRICT,     )

COAL CITY FIRE PROTECTION )

DISTRICT, SHAWN ANDERSON, )

BRAIDWOOD FIRE PROTECTION )

DISTRICT, BRAIDWOOD FIRE ) 

DEPARTMENT, CRAIG KASHER, )

MARES ITALY, HTM SPORT )

S.P.A., HEAD USA, INC., HTM )

USA HOLDINGS, DACOR )

INTERNATIONAL and LAKE COUNTY )

DIVERS SUPPLY, INC., ) 

                              ) Honorable Lance R. Peterson,

Defendants-Appellees. ) Judge, Presiding.

JUSTICE SCHMIDT delivered the opinion of the court:

This case arises out of the tragic death of Channahon firefighter Kenneth Frayne as Frayne trained to rescue others. Plaintiff, Deborah Frayne, as special administrator of the estate of her husband, Kenneth Frayne, filed this action seeking to recover damages following her husband's drowning in a lake at the Coal City Area Club (the Club).  Kenneth Frayne was a scuba diver for the Channahon Fire Protection District, participating in a multi-agency dive rescue training exercise at the time of his drowning.  The defendants relevant to this appeal are the various fire protection districts and employees thereof who also participated in the exercise.  The defendants moved for summary judgment claiming statutory immunity.  The circuit court of Grundy County granted defendants' motion.  Plaintiff appeals.

BACKGROUND

The training exercise mentioned above took place on October 13, 2001.  In addition to Mr. Frayne from the Channahon Fire Protection District (Channahon), other area rescue teams represented in the training exercise included the Coal City Fire Protection District (Coal City), the Braidwood Fire Department and Braidwood Fire Protection District (Braidwood), and the Minooka Fire Protection District (Minooka).  

At issue in this appeal are counts V through XVI of plaintiff's third amended complaint.  These counts are directed against Minooka, Braidwood, Craig Kasher (a Braidwood employee), Coal City, and Shawn Anderson (a Coal City employee).  

Plaintiff alleges that Minooka purchased and became owner of the scuba diving equipment used by Mr. Frayne during the exercise.  Plaintiff continues that Minooka was, in fact, supervising and controlling the lake as part of its participation in the training exercise.  Plaintiff further alleges that the fire protection entities had an agreement among themselves to participate in dive training exercises on a regular basis.

Plaintiff claims that pursuant to that agreement, Coal City requested and obtained permission from the Club to "use, occupy and control a part of the lake and its adjacent land to conduct the multi-agency dive training exercise."  Plaintiff maintains that these entities controlled every facet and imaginable detail of the training exercise.  Plaintiff argues that it was, therefore, (the duty of these entities) to exercise a reasonable degree of care and caution with regard to, not only the equipment used in the dive, but the parameters, conditions, and rules of the exercise itself.  Plaintiff alleges that the breach of one or more of these duties proximately caused the death of plaintiff's decedent.  

Defendants claim that as local public entities or employees they are immune from liability for the drowning of plaintiff's decedent in a body of water over which they had no control as defined by the statute.  745 ILCS 10/3--110 (West 2002).  

Jody Ritz is the Club manager.  The Club is run by its officers and a 13-person board.  The Club charges an annual fee and has various activities including fishing, boating, and camping.  There are no scuba activities or lessons allowed at the Club apart from the dive training exercises conducted by the fire protection districts.  The Club covers 1,000 acres and includes a main lake.  The Club is primarily accessed by key at the front entrance which opens an electronic gate.

Shawn Anderson was one of the 13 board members of the Club.  At the October 9, 2001, monthly meeting, the board discussed using the Club's facilities for a dive training exercise.  The board agreed to allow the firefighters to use the lake for the exercise.  There was no written contract between the Club and the firefighters and no fee was charged for the use of the lake.

The exercise took place on October 13, 2001.  Ritz was at the Club during the time of the exercise and spent approximately 40 minutes in the vicinity where the exercise was occurring.   No other club members were in the area where the exercise was taking place and Ritz was unaware of any interaction between other members of the Club and the divers.

According to Ritz, the firefighters determined which particular members of the municipalities would take part in the exercise.  All of the equipment was supplied by the firefighters.  The firefighters determined the parameters of the operation, including how long they would be there and who was responsible for cleaning up when they left.  The Club put no restrictions on the divers concerning the type of dive training exercises they would perform or how long the exercise would last.  No one from the Club gave any order or direction to the firefighters.  No one from the Club controlled the activities of the dive team or supervised what they were doing.  

Each of the participating fire protection districts had a dive coordinator of its own who took part in the training exercise.  Ed Wrobel and decedent, Kenneth Frayne, participated from Channahon.  Rich Arnold and Mike Thompson participated from Minooka.  Coal City was represented by Shawn Anderson, Tony Mauro, Willie Wrenn, and Tim Schulz.  Craig Kasher was the only representative from Braidwood.  Ed Wrobel testified in his deposition that the Coal City dive team was responsible for safety precautions with respect to activities that were being conducted in the lake.  

Craig Kasher from Braidwood stated that the exercise was one of several "cross trainings" in which Channahon, Braidwood, and Coal City routinely participate.  Kasher stated that the "dive training exercise was supervised by Shawn Anderson of the Coal City Fire Protection District."  Anderson would provide direction with regard to each drill.  Kasher further remarked that he did not know who was controlling, supervising, managing, operating, or maintaining the lake in the area where the dive was being conducted at the time it was being conducted.

Richard Arnold of Minooka also participated in the dive.  It was Arnold who supplied the allegedly defective scuba regulator to Kenneth Frayne.  Arnold stated that he did not know who was controlling, supervising, managing, operating, or maintaining the lake at the time of the dive.  In his opinion, Shawn Anderson was supervising the dive activities that were being conducted in the water that day.

Shawn Anderson is a lieutenant and dive coordinator for Coal City.  He has been a board member of the Club since 1996.  As a rule, scuba diving is prohibited at the Club apart from dive training exercises.  Anderson noted that since the training exercise at issue included entities other than Coal City, it was necessary to obtain specific board approval for use of the Club.  Anderson brought a request to the board and received its permission to use the Club.  Similar requests had been made in the past and permission was received on prior occasions.  According to Anderson, no restriction of any kind was imposed on the firefighters by the Club.  

Anderson claimed that the general idea of the dive was to have the divers search for and locate a sunken boat in which mannequins where placed.  No restrictions were placed on the divers as to the area of the lake that they could search.  Like all others that were at the lake that day, Anderson testified that he not see anyone out on the water other than the dive participants.

It was Anderson's belief that Jody Ritz was supervising the lake that day.  He based this belief on his knowledge that Ritz is the Club manager and was present at the Club during the exercise.  Anderson admitted that he controlled the dive activities "to a limited extent as the dive training coordinator."  Anderson stated that a "diver below" flag was placed at the site where the training was being conducted.  This flag consisted of a 3-foot-round inner tube and a 1 ½-foot flag that sticks up.  The purpose of the flag was "a precaution or warning sign to let other boaters know that we had divers below." 

The defendants mentioned above filed a joint motion for summary judgment, claiming statutory immunity from any liability arising out of decedent's injuries, which was ultimately granted by the circuit court.  This appeal followed.

ANALYSIS

We review an order granting summary judgment 
de novo
.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 649 N.E.2d 1323 (1995).  Summary judgment is a drastic means of disposing of litigation and is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  
Espinoza
, 165 Ill. 2d at 113.  On a motion for summary judgment, it is the movant who bears the burden of persuasion and the initial burden of production.  
Hall v. Flowers
, 343 Ill. App. 3d 462, 798 N.E.2d 757 (2003).  Furthermore, we must consider the affidavits, depositions, admissions, exhibits, and pleadings in the record in a light most favorable to the nonmoving party.  
Hall v. Flowers
, 343 Ill. App. 3d at 469.   Defendants who move for summary judgment may meet their initial burden of production by either: (1) affirmatively showing that some element of a cause of action must be resolved in their favor; or (2) demonstrating that plaintiff cannot produce evidence necessary to support the plaintiff's cause of action.  
Hall v. Flowers
, 343 Ill. App. 3d at 470.  If the defendants satisfy their initial burden of production, the burden shifts to the plaintiffs to present some factual basis that would arguably entitle them to a favorable judgment.  
Rice v. AAA Aerostar
, Inc., 294 Ill. App. 3d 801, 690 N.E.2d 1067 (1998).  

Defendants filed a "joint motion for summary judgment" pursuant to section 2--1005 of the Code of Civil Procedure.  735 ILCS 5/2--1005 (West 2004).  The joint motion alleges that section 3--110 of the Local Governmental and Governmental Employees Tort Immunity Act (the Immunity Act) (745 ILCS 10/3--110 (West 2002)) provides them with immunity from liability for plaintiff's injuries.

Affidavits attached to the motion all state that the lake was not owned, supervised, maintained, operated, managed, or controlled by the affiants' respective fire departments or fire protection districts.  Plaintiff filed a motion to strike these affidavits which was granted by the circuit court prior to its ruling on defendants' motion for summary judgment.  This ruling is not contested by defendants on appeal.

Plaintiff argues that the trial court erred in finding as a matter of law that the municipal entities and their employees were entitled to immunity where the competent evidence before the court failed to establish that defendants were not supervising or controlling the lake in which the fatal dive occurred.  Plaintiff correctly notes that section 3--110 of the Immunity Act states as follows:

     "Neither a local public entity nor a public

employee is liable for any injury occurring on, in, or

adjacent to any waterway, lake, pond, river or stream

not owned, supervised, maintained, operated, managed

or controlled by the local public entity."  745 ILCS

10/3--110 (West 2000).

Plaintiff correctly observes that if defendants engaged in any of the six enumerated activities specified in section 3--110 (owned, supervised, maintained, operated, managed, or controlled), immunity under the Act would not attach.  However, plaintiff avers that the circuit court erred in finding as a matter of law that defendants did not supervise or control the lake at the time of the dive.  We disagree.

After reviewing the facts of this case as they were presented by the parties and the applicable law, Judge Peterson found that "control of the dive with supervision of the dive does not equal supervision of the body of water."  The trial court based this ruling on 
McCoy v. Illinois International Port District
, 334 Ill. App. 3d 462, 778 N.E.2d 705 (2002).  In 
McCoy
, the plaintiff's decedent was a longshoreman assisting the untying of a docked vessel when he fell into the Calumet River and drowned.  The defendant port district was responsible for the maintenance of the facilities on the properties near the water.  Defendant also collected fees for use of those facilities and supplied fresh water to docked vessels.  Furthermore, the port district maintained the sea/dock wall from where plaintiff fell.  
McCoy
, 334 Ill. App. 3d at 464.

The 
McCoy
 plaintiff admitted that the defendant did not "own" the Calumet River in which the decedent drowned, but argued that section 3--110 of the Immunity Act should not attach since the defendant "plays a role in the maintenance, control, supervision and management of the river by conducting business on [it] and through its responsibility for the sea walls that contain the river."  
McCoy
, 334 Ill. App. 3d at 466.  Noting that the plain language of section 3--110 is unambiguous, the appellate court in 
McCoy 
agreed with the lower court's finding that although the defendant maintained all the facilities surrounding the river, such actions did not equate to owning, supervising, maintaining, operating, managing, or controlling the body of water which is the river.  
McCoy
, 334 Ill. App. at 468.  Judge Peterson took note of this distinction when concluding that although the defendants may have controlled and supervised the dive, they did not control or supervise the lake.  

Even when viewing the facts in the light most favorable to the plaintiff, there is no evidence suggesting that defendants could exert any minimal control over the lake.  As the trial court noted, the firefighters were nothing more than guests.  The uncontradicted deposition of Ritz makes it clear that defendants had no right to grant or deny anyone access to the lake or any portion of it.  In fact, for defendants to conduct this exercise, they were required to receive permission from the board of the Club.  

While the firefighters' movement on the lake was seemingly unrestricted, the record reveals that they had no authority to control the lake whatsoever.  Ritz stated:

     "They could use our lake, but they can't cord it

off.  Our members have the right to any waters out 

there and the fire department cannot rope it off or

say they can't come in here.  The members are the ones

that are paying for all the club and they get the use

of all the waters all the time."  

Ritz's statements regarding the firefighters' inability to deny access to the lake to anyone are buttressed by Anderson's testimony regarding the firefighters' use of the boat ramp.  Anderson stated it was necessary for the firefighters to move their vehicles away from the boat ramp "because we can't block entrance if somebody wanted to come out there."  

While the plaintiff notes that defendants, or at least some of them, controlled and supervised almost every aspect of the dive itself, including everything from what type of equipment would be used to who the dive partners would be, the trial court correctly found that the defendants, as a matter of law, did not supervise, control, or maintain the lake and, therefore, are immune under the plain language of the Immunity Act.  As such, we hold the circuit court of Grundy County correctly granted defendants' joint motion for summary judgment pursuant to section 3--110 of the Immunity Act and section 2--1005 of the Code of Civil Procedure.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Grundy County is affirmed.

Affirmed.

BARRY and LYTTON, JJ., concur.