FIRST DIVISION

September 2, 2003

No. 1-02-1920

ROSALIO CAMPOS, as Special Adm'r of the Estate of 

Camerino Campos,

Plaintiff-Appellant,

v.

DANIEL CAMPOS; and MARCELINO CAMPOS, as trustee under the Testamentary Trust of Daniel Campos,

Defendant, and Defendant-Appellee.

)))))))))))

Appeal from 

the Circuit Court

of Cook County

00 L 06931

Honorable

Kathy M. Flanagan, 

Judge Presiding

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff Rosalio Campos, as special administrator of the estate of his deceased brother, Camerino Campos, appeals from an order of the circuit court of Cook County granting summary judgment to defendant Marcelino Campos, as trustee under the testamentary trust of Daniel Campos and executor of the estate of Daniel Campos, Marcelino's deceased brother.
(footnote: 1)  Rosalio is not appealing from a prior order granting summary judgment to another defendant, the son of Daniel Campos, a beneficiary of the trust and the estate, who is also known as Daniel Campos.  Without distinguishing between the two men who shared the same name, Rosalio alleged in an initial complaint that Daniel Campos' negligence in the operation, maintenance, and control of an apartment building resulted in a fire which caused Camerino's death in 1998.  The building had been owned by the elder Daniel Campos until his death in 1996, but it was owned by his testamentary trustee in 1998 when the fire occurred.  A summons and a copy of the initial complaint were served on the younger Daniel Campos, who appeared, answered the complaint, and responded to Rosalio's discovery.  After the statute of limitations had expired and Rosalio was admittedly aware that the father was deceased and the son was defending the action, Rosalio amended his pleading, again suing "Daniel Campos" and suing Marcelino in his capacity as trustee.  In a second amended complaint, Rosalio for the first time added Marcelino in his capacity as executor.  Marcelino's motion for summary judgment was granted after the circuit court found there was no evidence that Rosalio intended to sue the deceased father within the statute of limitations period.

Rosalio's primary contention on appeal is that the record demonstrates his intent to sue the decedent within the limitations period and that he proceeded with reasonable diligence in seeking leave to amend his action after learning of the death through the discovery process.  Rosalio argues that his second amended complaint was rendered timely by section 13-209(c) of the Code of Civil Procedure (735 ILCS 5/13-209(c) (West 2000)).  Section 13-209(c) permits a party who "commences an action against a deceased person whose death is unknown to the party" to subsequently substitute the deceased person's representative as the defendant, even after the statute of limitations has run, if certain terms and conditions are met.  735 ILCS 5/13-209(c) (West 2000).  Rosalio also contends that Marcelino is equitably estopped from disputing the applicability of section 13-209(c).  Alternatively, Rosalio contends his action is not barred because of section 2-616(e) of the Code of Civil Procedure, which provides that a plaintiff's cause of action is not barred against a beneficiary of a land trust if the plaintiff has timely named the land trust.  See 735 ILCS 5/2-616(e) (West 2000).

The record discloses the following facts.  On August 5, 1998, a fire occurred at a four-unit apartment building located at the intersection of East 96th Street and South Exchange Avenue, Chicago.  The building had two addresses -- two of the apartments in the building were accessible from an entrance at 9607 South Exchange Avenue and the other two apartments were accessible from an entrance at 2941 East 96th Street.  Camerino, who resided in the building, suffered fatal smoke inhalation during the fire and died that same day.

On June 16, 2000, nearly two years after the fire occurred, Camerino's brother filed this action against Daniel Campos, seeking monetary damages.  Rosalio alleged in paragraph 4 of the complaint that Daniel Campos owned, maintained, and controlled 9607 South Exchange Avenue.  Further, defendant was negligent in failing to maintain smoke detectors in the building and in storing or allowing other persons to store flammable substances on the premises.  On September 26, 2000, a special process server served a summons and a copy of the complaint at the address Rosalio provided, 2949 East 96th Street, Chicago, upon a member of the household of "Daniel J. Campos," and then mailed an additional copy of the summons and complaint to "Daniel J. Campos" at the same address.

On December 15, 2000, after the circuit court vacated any technical defaults and extended the time to answer or otherwise plead, "Daniel Campos" appeared.  On January 24, 2001, "Daniel Campos" answered the complaint, denying the allegations that he owned, maintained, and controlled 9607 South Exchange Avenue.

On April 30, 2001, "Daniel Campos" responded to Rosalio's interrogatories and Rosalio's request to produce certain documents.  He stated that his full name was "Daniel Julian Campos" and that his date of birth was August 4, 1982.  Additionally, in response to interrogatories concerning ownership and insurance coverage as of the date of the fire, he stated, "I was not the owner of the premises."  When asked whether the premises were equipped with smoke alarms, he indicated on information and belief that smoke alarms were present when his father purchased the building in 1989 and that additional smoke alarms may have been installed thereafter.  He also indicated that all four residential units were occupied on the date of the fire, but when asked whether he charged for rental of any of the units, he responded, "I did not rent the residential units."  The interrogatory answers were signed by "Daniel J. Campos."

According to Rosalio, when his attorney received the interrogatory answers, the attorney telephoned defense counsel and learned that the elder Daniel Campos was deceased.  A few days later, on May 7, 2001, Rosalio's attorney received a copy of the "Last Will and Testament of Daniel Campos."  The will designated Marcelino as the executor of the estate of Daniel Campos, devised the subject real estate to "my son Daniel Julian Campos unto [Marcelino] Campos, as trustee," and gave the trustee discretion to terminate the trust when the son reached 18 years of age.  The will also specified: 

"In addition to any other powers that may be conferred *** by law, my trustee shall have power and authority: 

* * *

J.  To do all such acts, take such proceedings, and exercise all such rights and privileges, although not hereinbefore specifically mentioned, with relation to such property as I may leave, as if it were the absolute owner thereof ***."

  The elder Daniel Campos died on November 18, 1996, nearly two years before the fire occurred.

On May 29, 2001, nearly three years after the fire, Rosalio was given leave to file an amended complaint "adding [an] additional party Defendant."  The defendants named in the amended pleading were "Daniel Campos and Marcelino Campos, as trustee under Testamentary Trust of Daniel Campos."  Rosalio now alleged that "Marcelino Campos, under testamentary trust of Daniel Campos for the use and benefit of Daniel Campos and Daniel Campos as beneficiary of said trust, owned, maintained and controlled" the subject real estate when the fire occurred.  

"Daniel Campos" again denied the allegation that he had owned, maintained, and controlled the real property.  After Rosalio obtained service of process on "Marcelino Campos as trustee," Marcelino appeared and answered, admitting ownership of the real property as a trustee for the use and benefit of Daniel Campos.  In an affirmative defense, however, Marcelino contended that Rosalio's claims against him as a trustee, which were brought more than two years after the fire and were based on the Wrongful Death Act (740 ILCS 180/2(c) (West 2000) (every such action shall be commenced within two years after the death), the Survival Act (755 ILCS 5/27-6 (West 2000) (see 735 ILCS 5/13-202 (West 2000) (actions shall be commenced within two years next after the cause accrued)), and the family expense act (see 750 ILCS 65/15 (West 2000)), were barred by the statute of limitations.  

On June 27, 2001, Rosalio sat for a deposition and stated the following.  He was born on February 23, 1962, and his brother Camerino was born on May 30, 1982.  Daniel Campos was his cousin, and Marcelino Campos was his father's cousin.  The following exchange occurred during the deposition:

"Q: Was Daniel ever at the building prior to the fire?

A: No.

Q: And the Daniel I'm referring to would be your cousin, Daniel Julian Campos?

A: Junior?

Q: Yes.

A: Yes.  I didn't see him there.  He didn't live there.

Q: And did you know Daniel Campos, Daniel Julian Campos' father?

A: Yes.

Q: Okay.  And do you remember when he passed away?

A: About two years before, something like that.

Q: Before the fire?

A: Yes."

Further, Rosalio found out that the apartment was available for rent by phoning Marcelino.  He and Camerino moved into the apartment in April of 1998, and his friend Ricardo moved in two months later.  Rosalio paid the rent to Marcelino each month in cash.  Marcelino would come to the building, to collect the rent or if someone called about a problem.  

When the fire occurred, Rosalio was awoken at 5 a.m. or a little bit after by a bad smell and someone "throwing something to the window."  He got out of bed and saw a lot of flames and smoke on the porch.  He called for his brother Camerino, who did not answer, and for his friend Ricardo, who came out of the bedroom.  The lights in Camerino's bedroom were on and the bedroom door was open, and Rosalio thought Camerino had already left.  He took the phone to the living room and tried to dial 911, but he could not see the numbers through the smoke.  As Ricardo was going out the door, Ricardo said "let's go" and "leave that," and Rosalio left with Ricardo.  Camerino was not outside, and when Rosalio tried to go back to get him, he could not breathe because of the smoke and came back down the stairs.  When the firefighters arrived, Rosalio directed them to Camerino's bedroom, but they were unable to go inside because the fire was "very strong."  After the firefighters broke the windows and opened the roof, the firefighters went inside and found Camerino in the living room.

Additionally, in response to defendants' request to admit facts, Rosalio denied that he knew the elder Daniel Campos was deceased when Rosalio rented the apartment in approximately April 1998 and when Rosalio filed his original complaint on June 16, 2000, and he indicated that after he filed suit he learned of the death.

On July 17, 2001, Rosalio deposed Daniel Julian Campos, who again stated that his date of birth was August 4, 1982.  He also indicated that he was 16 years old on the day of the fire.  When asked when he became legal or equitable owner of the apartment building, he answered, "Since 18th, since I turned 18, 18th birthday."  He stated that before he owned the building, the building was held in a trust established by his father, Daniel, who had died on November 18, 1996.  His uncle Marcelino paid the mortgage, rented out the apartments, collected rent, and made repairs.  He also indicated that the deceased, Camerino, was his cousin, and he answered affirmatively to the question, "He was a far away cousin?"  After his father's death, he went to the property by himself every Saturday morning to sweep the stairway, pick up papers and garbage, and cut the grass, because his uncle Marcelino told him to do the chores.  During the winter months he would clean the stairs and rear porches and shovel snow.  He never visited the Campos family before the fire.  He had met Camerino earlier that year when Camerino came from Mexico, and he socialized with Camerino only once, on the evening before the fire occurred.  After his father died, he began living four or five houses away from the property, at 2949 East 96th Street, with his aunt Elvira, who had become his legal guardian, and his uncle Celerino.  He would see Rosalio and Camerino pass by in their van, and they would exchange greetings.  When the fire occurred, he was sleeping, but was awoken by a neighbor shouting for the occupants to get out of building.  He went outside and spoke with Rosalio.  He attended Camerino's funeral with his uncles Marcelino and Celerino.

On July 31, 2001, Rosalio answered Marcelino's affirmative defense, denying that the claims he asserted against the trustee more than two years after the fire were untimely. 

On September 12, 2001, Rosalio took Marcelino's deposition.  Marcelino indicated he was born on July 17, 1947.  His brother Daniel owned the subject property until his death.  At one point, although Marcelino could not recall precisely when, his brother Daniel had resided in the first-floor front apartment unit.  At the time of his death, Marcelino's brother Daniel was residing on 95th Street.  His brother Daniel left the real estate to Daniel's son in trust and named Marcelino as the trustee.  Marcelino's lawyer recorded documents at the recorder of deeds' office, and Marcelino had copies of documents bearing the stamp of the recorder of deeds.  Marcelino informed the mortgage company that his brother Daniel had died, and Marcelino received a letter from the mortgage company agreeing to transfer the mortgage.  After his brother Daniel died, Marcelino took "control over renting the apartments."  Marcelino did not collect rent at the property until his brother Daniel died.  Marcelino's "nephews" Rosalio Campos and Camerino Campos, and Ricardo Cortez were residing in the second-floor rear unit on August 5, 1998, and Camerino was killed in the fire that occurred that day.  Camerino was the son of Marcelino's cousin Gabriel Campos.  After the fire, Marcelino arranged for the building to be repaired.  Marcelino had agreed to carry out his brother Daniel's wishes to transfer the property to the younger Daniel Campos when the younger man turned 18.  When Marcelino sat for the deposition, Rosalio was renting an apartment that Marcelino and Marcelino's wife owned, and Marcelino was collecting rent from Rosalio.

On October 2, 2001, Daniel filed a motion for summary judgment, which was based on the amended complaint, Daniel's answer, the will, and the deposition transcripts of Daniel, Marcelino and Rosalio.  Daniel argued that he was only 16 years old when the fire occurred and had not owned, occupied, possessed or controlled the subject property and, therefore, had not owed any actionable duty to Camerino.  Generally, a trustee having legal title to real estate, together with the right of possession, is regarded as the owner of the property and is subject to all the liabilities of ownership.  
Wahl v. Schmidt
, 307 Ill. 331, 336, 138 N.E. 604, 606 (1923).  Further, injuries due to the negligent maintenance of real property give rise to a right of recovery against the party in control and possession of the premises.  
Conway v. Epstein,
 49 Ill. App. 2d 290, 294, 200 N.E.2d 16, 18 (1964).  Daniel concluded that in the absence of any actionable duty, he was entitled to judgment on Rosalio's negligence claims.

Rosalio responded that summary judgment should be denied because Daniel was either the owner of the property or the owner of a beneficial or equitable interest in the property and, therefore, subject to liability.  Rosalio also argued there were questions of fact as to whether Daniel exerted a principal-agent relationship over the trustee.

On December 5, 2001, the circuit court granted Daniel's motion for summary judgment, finding that (1) although Daniel held beneficial title to the subject property, the evidence showed that Daniel did not maintain or control the property, and there was no evidence showing that he made any decisions or had any knowledge with regard to smoke detectors or the storage of flammable substances at the property, and (2) there were no allegations or evidence with regard to an agency relationship between Daniel and his uncle Marcelino. 

On February 1, 2002, the remaining defendant, Marcelino, moved for summary judgment, arguing that a two-year statute of limitations barred Rosalio's claims.

On March 1, 2002, Rosalio was given leave to file a second amended complaint and filed a second amended complaint which for the first time named Marcelino in his capacity as "Independent Executor of the Estate of Daniel Campos, deceased."

On March 19, 2002, Rosalio responded to the motion for summary judgment, conceding that Marcelino was not named as a defendant within two years of the fire, but arguing that the allegations were timely brought in light of sections 13-209(c) and 2-616(e) of the Code of Civil Procedure (735 ILCS 5/2-13-209(c), 2-616(e) (West 2000)).

Thereafter, the circuit court granted Marcelino's motion for summary judgment, specifically finding that Rosalio never intended to sue Daniel Campos, the father, before the statute of limitations had run.  Rosalio filed a motion for reconsideration, which included evidentiary material not previously offered to the court.  The circuit court denied reconsideration.  This timely appeal followed.  Rosalio appeals only from the April 24, 2002, order granting summary judgment to Marcelino.

Our first consideration is Rosalio's contention that section 13-209(c) is applicable here.  Section 13-209(c) provides that "[i]f a party commences an action against a deceased person whose death is unknown to the party before the expiration of the time limited for the commencement thereof, and the cause of action survives, and is not otherwise barred, the action may be commenced against the deceased person's personal representative," upon meeting various terms and conditions.  735 ILCS 5/13-209(c) (West 2000).  Those terms and conditions include that "[a]fter learning of the death, the party proceeds with reasonable diligence to move the court for leave to file an amended complaint, substituting the personal representative as defendant."  735 ILCS 5/13-209(c)(1) (West 2000).  Additionally, "In no event can a party commence an action under [section 13-209(c)] unless *** an amended complaint is filed within 2 years of the time limited for the commencement of the original action." 735 ILCS 5/13-209(c)(4) (West 2000). 

Thus, section 13-209(c) will apply if the defendant named in Rosalio's timely original complaint was the deceased.  However, if Rosalio did not commence his action against the deceased, then section 13-209(c) will not apply.  Rosalio contends the record clearly evidences his intent to sue the deceased prior to the expiration of the statute of limitations or at least demonstrates a material question of fact as to whom Rosalio intended to sue, precluding summary judgment for Marcelino.  Marcelino responds that section 13-209(c) does not apply because there is no evidence that Rosalio intended to sue the deceased.

Summary judgment is properly granted where the pleadings, depositions, and affidavits on file show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 
Soderlund Brothers, Inc. v. Carrier Corp.
, 278 Ill. App. 3d 606, 613-14, 663 N.E.2d 1, 6-7  (1995).  In ruling on a motion for summary judgment, the circuit court must construe the pleadings, depositions, and affidavits on file in a light most favorable to the nonmoving party.  
Soderlund Brothers
, 278 Ill. App. 3d at 614, 663 N.E.2d at 7.  If fair-minded persons could draw different inferences from the undisputed facts, summary judgment should not be granted.  
Soderlund Brothers
, 278 Ill. App. 3d at 614, 663 N.E.2d at 7.  Appellate review of an order granting summary judgment is 
de novo
.  
Soderlund Brothers
, 278 Ill. App. 3d at 614, 663 N.E.2d at 7.  After our 
de novo
 review, we conclude that Rosalio never commenced suit against the deceased but instead commenced an action against the decedent's son.

The record shows that Rosalio sent the process server to the home of the younger Daniel Campos, 2949 East 96th Street, Chicago.  According to the younger Daniel Campos' deposition testimony, he only began living at 2949 East 96th Street after his father died in 1996, when the younger man was 14 years old.  The younger Daniel Campos moved in with his aunt Elvira and uncle Celerino, to their apartment at 2949 East 96th Street, and his aunt Elvira became his legal guardian.  Additionally, there is no indication that the elder Daniel Campos ever resided at 2949 East 96th Street.  According to Marcelino's deposition testimony, the elder Daniel Campos was residing on 95th Street when he died in 1996 and, for a time, he had resided in the building where the fire would eventually occur in 1998.  As noted above, the building had an entrance at 9607 South Exchange Avenue, the address specified in the Rosalio's suit, and a separate entrance at 2941 East 96th Street.  According to the younger Daniel Campos, his uncle Celerino's apartment at 2949 East 96th Street was four or five houses away from the building where the fire occurred. Thus, when Rosalio sent the process server to 2949 East 96th Street to serve "Daniel Campos," Rosalio was attempting to and did serve the younger Daniel Campos.

Additionally, Rosalio showed no intent to sue the elder Daniel Campos until after summary judgment was granted in favor of the younger Daniel Campos, despite the facts that the younger Daniel Campos' relative youth and interrogatory answers made it clear that he did not own, maintain, or control the subject property when the fire occurred, and that questions about the elder man's death and the subsequent ownership, maintenance, and control of the building were obvious during the discovery phase which preceded the motion for summary judgment. 

After the younger Daniel Campos was served at the apartment he shared with his aunt and uncle, he appeared and answered, denying the material allegation that he "owned, maintained and controlled" the building where the fire occurred.  In response to Rosalio's subsequent interrogatories, which he signed "Daniel J. Campos," the defendant disclosed that his full name was "Daniel Julian Campos."  He also disclosed that his date of birth was August 4, 1982 -- indicating that the person defending Rosalio's suit was 16 years when the fire occurred on August 5, 1998, 17 years old when the complaint was filed on June 16, 2000, 18 years old when service was perfected on September 27, 2000, and 20 years old when the answer was filed on January 24, 2001.  He also indicated that his father had purchased the building in 1989, and he denied owning the building or renting out any of the apartments in the building.  In response to Rosalio's further inquiry, he also disclosed the date of his father's death and provided Rosalio with a copy of his father's will, which further disclosed that father and son shared the same name, another relative had a similar name, and that Marcelino was the executor of the father's estate and trustee of the subject property after the father's death in 1996.

Even though all these facts were conveyed to Rosalio, he did not respond with any indication that he had intended to sue the elder Daniel Campos.  He did not seek leave to substitute the executor of the father's estate as the lone defendant to the negligence action, pursuant to section 13-209(c) of the Code of Civil Procedure (735 ILCS 5/13-209(c) West 2000)).  Instead, Rosalio used the additional facts to continue his pursuit of the son.  He obtained leave to add a party, not to substitute a party, and then he named "Daniel Campos," and the additional party, "Marcelino Campos, as trustee under Testamentary Trust of Daniel Campos," as defendants.

In the body of the amended pleading, filed one month after Daniel Campos filed interrogatory answers indicating that he was born in 1982, Rosalio alleged that in 1998, "Marcelino Campos, under testamentary trust 
of Daniel Campos for the use and benefit of Daniel Campos and 
Daniel Campos as beneficiary of said trust owned, maintained and controlled the premises at 9607 S. Exchange, Chicago, Illinois, being [an] *** apartment building *** 
rented for profit."  Rosalio further alleged that these individuals breached a duty owed to Camerino to "exercise ordinary care and caution in the maintenance and control of said premises."

In a deposition that was taken approximately one month later, Rosalio acknowledged that the elder Daniel Campos was deceased.  He also referred to Daniel Campos as his "cousin," and Marcelino Campos as his "father's cousin," giving an additional indication that he intended to sue the younger Daniel Campos.  When Rosalio subsequently deposed Daniel Campos and Marcelino Campos, he questioned them about the ownership, maintenance, and control of the property.  Both men indicated that the elder Daniel Campos was deceased.  They also indicated that the property had passed into a trust after his death and had subsequently been transferred to the younger Daniel Campos when the younger man reached adulthood.  They also indicated that while the property was in the testamentary trust, Marcelino had paid the mortgage, maintained the property, rented out the apartments, and repaired the building after the fire.  Even though details of the property's ownership, maintenance, and control were central to the discovery process, Rosalio never gave any indication during the discovery phase that he had intended to sue the elder Daniel Campos.

In fact, when the younger Daniel Campos moved for summary judgment on the basis of the amended complaint, his answer, the will, and the deposition testimony given by Rosalio, Marcelino, and himself, Rosalio responded that summary judgment should be denied because Daniel Campos owned the property, or at least owned a beneficial or equitable interest in the property which subjected him to liability for Camerino's death.  Rosalio made specific references to the will, the trusteeship created by the will, and Rosalio's deposition testimony, and he referred to the defendant as "Daniel," "Daniel J.," and "Daniel Julian."  Rosalio further argued that there was a fact question as to whether Marcelino had served "as agent of Daniel Julian" in the operation, management, and control of the property.  In short, Rosalio opposed the motion for summary judgment on the basis of the younger Daniel Campos' liability.  He did not argue that summary judgment should be denied because Rosalio had intended to sue the elder, deceased Daniel Campos.  Further, after the circuit court granted summary judgment against Rosalio in an order which included language making the court's finding immediately appealable pursuant to Supreme Court Rule 304(a) (155 Ill. 2d. R. 304(a)), Rosalio sought neither reconsideration nor an appeal on the basis of his intent to sue the deceased father.

It was not until Marcelino filed a motion arguing that the amended complaint was barred by the statute of limitations that Rosalio first sought leave to file a second amended complaint in order to name Marcelino in his additional capacity as executor of the estate of the elder Daniel Campos.  At this stage of proceedings, February 21, 2002, Rosalio's action had been pending for almost two years.

Accordingly, we find there was no question of fact that Rosalio was aware of the ownership issues with regard to the property and never, prior to the filing of the second amended complaint, showed any intention to sue the deceased father.  Because Rosalio never commenced an action against the deceased within the statute of limitations, section 13-209(c) does not apply, and, therefore, the second amended complaint was untimely.

 Citing 
Geddes v. Mill Creek Country Club, Inc.
, 196 Ill 2d 302, 751 N.E.2d 1150 (2001), Rosalio also argues that the doctrine of equitable estoppel should prevent Marcelino from contesting the application of section 13-209(c).   

In 
Geddes
, based on the doctrine of equitable estoppel, landowners were not permitted to assert claims for intentional trespass and intentional private nuisance based on errant golf balls hitting their property after the landowners knowingly had agreed to have a real estate developer place a golf course fairway adjacent to their property, instead of a bicycle path or a residence.  
Geddes
, 196 Ill. 2d 302, 751 N.E.2d 1150.

The party claiming equitable estoppel has the burden of proving it by clear and convincing evidence.  
Geddes
, 196 Ill. 2d at 314, 751 N.E.2d at 1157.

"To establish equitable estoppel, the party claiming estoppel must demonstrate that: (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." 
Geddes
, 196 Ill. 2d at 313-14, 751 N.E.2d at 1157.

In support of his equitable estoppel argument, Rosalio cites to actions purportedly taken by State Farm Insurance Company, Daniel Campos, Marcelino, and the defense attorney who represented both Daniel Campos and Marcelino.  Some of these actions are reflected in documents which were only attached to Rosalio's motion for reconsideration.  We cannot consider these documents, because the scope of appellate review of a summary judgment motion is limited to the record as it existed when the circuit court ruled.  
McCullough v. Gallagher & Speck
, 254 Ill. App. 3d 941, 947, 627 N.E.2d 202, 207 (1993).  Furthermore, a trial judge is not required to consider documents attached to a plaintiff's motion for reconsideration of a summary judgment ruling where the plaintiff failed to file the documents in response to the defendant's motion for summary judgment.  
McCullough
, 254 Ill. App. 3d at 947, 627 N.E.2d at 207.  A trial court should not permit a litigant to stand mute, lose a motion, and then gather evidentiary material to show that the court erred in its ruling.  
Gardner v. Navistar International Transportation Corp.
, 213 Ill. App. 3d 242, 248, 571 N.E.2d 1107, 1111 (1991).  Accordingly, we will not consider Rosalio's late-tendered documents.

Furthermore, Rosalio fails to explain how the conduct of State Farm Insurance, Daniel Campos, and an attorney could ever trigger the application of equitable estoppel doctrine against Marcelino.  In fact, Rosalio does not attempt to apply the facts of this case to any of the six elements of equitable estoppel stated in the case he is relying upon, he fails to cite to specific pages of the record in support of his theory, and he has raised the theory for the first time on appeal.  Any of these three failures alone would be sufficient basis for determining that the theory of equitable estoppel is waived.  See 
Elder v. Bryant
, 324 Ill. App. 3d 526, 529-30, 533, 755 N.E.2d 515, 519, 521-22 (2001) (appellant's brief must contain his contentions and the reasons therefor, accompanied by citation to authorities and pages of the record, or the arguments are waived; matters raised for the first time on appeal are waived).  Accordingly, we find that Rosalio has waived the contention that the doctrine of equitable estoppel should prevent Marcelino from contesting the application of section 13-209(c).

Rosalio also argues that the misnomer statute applies because Rosalio intended to and did sue the correct party but by the wrong name, when he named Marcelino in his capacity as trustee but not as executor in the first amended complaint.  Rosalio subsequently named Marcelino in his capacities as trustee and executor in the second amended complaint.  In a misnomer case, actual notice of the lawsuit is given to the real party in interest, but the complaint and process do not refer to that person by his correct name.  
Borg v. Chicago Zoological Society
, 256 Ill. App. 3d 931, 934, 638 N.E.2d 306, 308 (1993).  The misnomer statute permits the plaintiff to correct the name of a party at any time, before or after judgment (see 735 ILCS 5/2-401(b) (West 2000)), and thus prevents a minor technicality from depriving the plaintiff of the right to have his case resolved on the merits (
Borg
, 256 Ill App. 3d at 937, 628 N.E.2d at 310).  

"The rule that misnomer is not a ground for dismissal is a narrow one, and applies only where an action is brought and summons is served upon a party intended to be made a defendant."   
Barbour v. Fred Berglund & Sons, Inc.
, 208 Ill. App. 3d 644, 648, 567 N.E.2d 509, 511 (1990).   In other words, the misnomer statute applies only to correctly joined and served, but misnamed, parties.  
Barbour
, 208 Ill. App. 3d at 648, 567 N.E.2d at 512.  For example, in 
Borg
, 256 Ill. App. 3d at 933-34, 638 N.E.2d at 308, the erroneous naming of "Chicago Zoological Park, Inc. a/k/a Brookfield Zoo," instead of "Chicago Zoological Society, a not for profit Corporation," was a misnomer which the plaintiff could correct at any time.

In contrast, "mistaken identity" occurs when the wrong person was joined and served.  
Barbour
, 208 Ill. App. 3d at 648, 567 N.E.2d at 512.  For example, in 
Hoving v. Davies
, 159 Ill. App. 3d 106, 512 N.E.2d 729 (1987), an injured patron was mistaken about the identity of the owner and operator of the lounge where he was injured and named "Barbara Davies and John Davies, individually and doing business as the Villa Marie East," instead of the real party in interest, "John A. Davies, a corporation," which owned and operated the Villa Marie East.  

In cases of mistaken identity, the misnomer statute has no application.  See 
Barbour
, 208 Ill. App. 3d 644, 567 N.E.2d 509.  In cases of mistaken identity, the plaintiff must correct his error by naming and serving the proper defendant within the applicable statute of limitations.  See 
Barbour
, 208 Ill. App. 3d 644, 567 N.E.2d 509.  Accordingly, in 
Hoving
, the misnomer statute was inapplicable.  
Hoving
, 159 Ill. App. 3d at 109 (patron "did not merely misname the right party, but named the wrong party).

Even though Rosalio has waived the misnomer theory for failing to raise it in the trial court (
Elder
, 324 Ill. App. 3d at 529), the misnomer statute (735 ILCS 5/2-401(b) West 2000)) does not apply here.  This is a case of mistaken identity, because Rosalio named and served Daniel Campos, the son.  Rosalio was mistaken in his belief as to who owned the property when the fire occurred.  Rosalio did not merely misname the right party, he named and served the wrong party.  
Hoving
, 159 Ill. App. 3d at 109.

Rosalio's suggestion that he misnamed Marcelino in his capacity as trustee fails because Rosalio named and served Marcelino only after the statute of limitations had run.  Originally, Rosalio mistakenly identified the owner of the property as Daniel Campos, the son, not Marcelino.  Only after the statute of limitations had expired did he name Marcelino.  Because Rosalio named and served the wrong person originally, he needed to correct the error within the applicable statute of limitations.  See 
Barbour
, 208 Ill. App. 3d 644, 567 N.E.2d 509.  Rosalio never did this, so his argument fails.

Finally, Rosalio argues this case "presents a unique set of facts for which section 2-616(e) should apply."  Section 2-616(e) of the Code of Civil Procedure provides that a plaintiff's cause of action is not barred against a beneficiary of a land trust if the plaintiff has timely named the land trust.  735 ILCS 5/616(e) (West 2000).  Section 2-616(e) was intended to remedy the injustice which could result from the inability of a plaintiff injured on land held in a land trust to identify the beneficiary prior to running of the statute of limitations.  
Klebe v. Patel
, 247 Ill. App. 3d 474, 478, 616 N.E.2d 1018, 1020 (1993).  According to the statute, a plaintiff may file an amended complaint naming the beneficiary as a defendant which will relate back to the original complaint. 
Klebe
, 247 Ill. App. 3d at 477, 616 N.E.2d at 1020.  Marcelino was not a beneficiary of a land trust.  Consequently, we find that section 2-616(e) does not apply to the facts of this case.

We are not persuaded by any of Rosalio's arguments in regard to the circuit court's ruling, and we conclude that Marcelino's motion for summary judgment was properly granted.  The order of the circuit court therefore is affirmed.

Affirmed.

BURKE and GARCIA, JJ., concurring.

FOOTNOTES
1: 
 Rosalio's notice of appeal identified Marcelino Campos in his capacity as trustee only; however, the second amended complaint on file at the time that summary judgment was entered also designated Marcelino Campos in his capacity as estate executor.