# Illinois Official Reports

## Appellate Court

---

### *Kainrath v. Grider*, 2018 IL App (1st) 172270

---

| | |
|---|---|
| Appellate Court Caption | FRANK KAINRATH, RAUL AGUIRRE, and JASON PYLE, Plaintiffs-Appellees, v. JAY GRIDER, Individually and in His Official Capacity as Stickney Township Assessor, LOUIS S. VIVERITO, Individually and in His Official Capacity as Stickney Township Supervisor, and THE TOWNSHIP OF STICKNEY, Defendants (Jay Grider, Individually and In His Official Capacity as Stickney Township Assessor, and The Township of Stickney, Defendants-Appellants). |
| District & No. | First District, First Division<br>Docket No. 1-17-2270 |
| Filed | November 26, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2015-L-6481; the Hon. Daniel T. Gillespie, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Del Gado Law Group, LLC, of Berwyn (K. Austin Zimmer and Joseph A. Giambrone, of counsel), for appellants.<br><br>John S. Xydakis, of Chicago, for appellees. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Harris and Griffin concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiffs, three municipal officeholders and current or former employees of the City of Burbank, Illinois, sued defendants Jay Grider and the Township of Stickney for defamation and false light. Plaintiffs alleged that Mr. Grider, in his capacity as the Stickney Township Assessor, sent a letter to newspapers, local officials, and others challenging plaintiffs' ethics and accusing them of illegally obtaining property exemptions, effectively causing homeowners in Burbank to pay more than their fair share in property taxes. Defendants now appeal from the denial of their motion for summary judgment, in which they claimed protection under the Citizen Participation Act (Act) (735 ILCS 110/1 *et seq.* (West 2014)), our state's anti-SLAPP (Strategic Lawsuits Against Public Participation) act. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 2                                    BACKGROUND

¶ 3 Plaintiffs in this case are Burbank Building Commissioner Frank Kainrath, Burbank Alderman Jason Pyle (also an employee of the Cook County Assessor's office) and Raul Aguirre, a former employee of both the Burbank Zoning Department and the Cook County Board of Review. Mr. Kainrath and Mr. Pyle supported Mr. Aguirre in an unsuccessful electoral race against defendant Jay Grider for Stickney Township Assessor in 2013. In their initial complaint, filed on June 25, 2015, plaintiffs alleged that Mr. Grider, in his capacity as Stickney Township Assessor, sent a defamatory letter accusing them of "wrongful and criminal acts." The letter was sent to a number of recipients, including the Cook County Assessor, the mayor of Burbank, the Better Government Association, and various news organizations. Plaintiffs sued Mr. Grider, individually and in his capacity as Stickney Township Assessor, for defamation and false light, seeking $12 million in compensatory damages and an additional $12 million in punitive damages "or an amount to be proven at trial."

¶ 4 Mr. Grider's June 2015 letter, which plaintiffs attached to their complaint, bore the heading "Why homeowners in Burbank can't catch a break on their property taxes" and stated that it was "By Jay Grider, Assessor[,] Stickney Township." In the letter Mr. Grider described how, "[i]n the course of processing the paperwork that comes through [his] office and reviewing public records online," he had "discovered how several current and former public servants used their inside status to scratch their own backs and lower their own property taxes—causing [the] homeowners of Burbank to pay more property taxes."

¶ 5 Mr. Grider asserted in the letter that "[a]t the top of th[at] ethically-challenged group" and "tax cheating posse" was Mr. Kainrath, who as building commissioner had "follow[ed] a pattern of withholding [the] assessable building permits of his preferred network of home builders and contractors *** to delay the improved properties from reaching the tax rolls in a timely manner." According to the letter, Mr. Kainrath was also a "Top Ten rental-property owner in Burbank," who used land trusts to hide his ownership interests in multiple

single-family homes and who for years had received "multiple illegal homeowner exemptions," until "the Erroneous Exemption law went into effect."

¶ 6    The letter described Mr. Pyle, an employee of the Cook County Assessor's office for over 10 years, as "Kainrath's primary inside connection" for illegal exemptions. Mr. Grider asserted in his letter both that Mr. Kainrath developed and owned the property then used by Mr. Pyle as a primary residence and that Mr. Pyle assisted Mr. Kainrath with property tax appeals to reduce the assessed value for the property in 2010-12.

¶ 7    According to Mr. Grider's letter, "former Burbank Zoning Department employee Raul Aguirre," who "worked for the County Board of Review until his retirement in 2012," also helped Mr. Kainrath with property tax appeals and "bled taxpayers through illegal exemptions and inside-access to property tax appeals for real estate he owned in Burbank."

¶ 8    The letter concluded by explaining that Mr. Grider enjoyed his job as township assessor, "saw it as [his] duty to bring the above listed transgressions to light so the taxpayers in Burbank c[ould] get some relief," and believed that what he had detailed in his letter was "only the tip of the iceberg for th[e] situation."

¶ 9    Defendants moved to dismiss plaintiffs' first amended complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2014)), arguing protection under the Act. A third defendant who was dismissed from the case and is not a party to this appeal also moved to dismiss, through a combined 2-619.1 motion (*id.* § 2-619.1). Ruling from the bench on September 14, 2016, the circuit court struck plaintiffs' claims for punitive damages, along with certain of their allegations that it felt did not "go to the issue of whether or not this statement by [Mr.] Grider was defamatory or not, which is really the issue we're talking about." Without ruling on defendants' arguments for dismissal based on the Act—which are at the heart of this appeal—the circuit court granted plaintiffs leave to file a second amended complaint.

¶ 10    On June 23, 2017, defendants moved for summary judgment, arguing that they were immune from suit pursuant to the Act. Defendants insisted that no genuine issue of material fact existed as to whether they were entitled to immunity under sections 15 and 20 of the Act (735 ILCS 110/15, 20 (West 2014)). Defendants asserted that they had made the required threshold showings under that law that Mr. Grider's letter was an act of participation in government to obtain favorable government action and that plaintiff's suit was meritless and filed solely in response to Mr. Grider's protected actions, both because the statements in the letter were true and because the statements were reasonably related to Mr. Grider's duties as Stickney Township Assessor and were thus privileged and nonactionable. Defendants argued that the burden then shifted to plaintiffs to demonstrate by clear and convincing evidence that the letter was not genuinely aimed at procuring favorable government action, and that plaintiffs failed to carry this burden.

¶ 11    Defendants attached to their motion an affidavit by Mr. Grider, in which he explained that, as Stickney Township Assessor, he is a deputy assessor for the Cook County Assessor, is trained and certified to assess the value of residential property in Cook County, and handles inquiries from taxpayers regarding the amount of real estate taxes assessed on properties within the township. Mr. Kainrath, as Building Commissioner for the City of Burbank, is responsible for submitting building permits to Mr. Grider's office in a timely manner. Mr. Grider received one such permit for a pool to be built on a vacant piece of property but learned, by reviewing documents and public records available through the Assessor's internal operating

system, that the property was not vacant but in fact contained a brand-new home, for which no building permit had ever been obtained. This caused Mr. Grider to investigate other permits from Mr. Kainrath's office. According to Mr. Grider, the focus of that investigation soon spread from Mr. Kainrath to Mr. Pyle and Mr. Aguirre and resulted in the findings stated in Mr. Grider's June 2015 letter. Mr. Grider attached a number of documents to his affidavit, including property tax search results and the transcript of his deposition.

¶ 12 In response to defendants' motion, plaintiffs argued that the Act did not provide immunity because defendants failed to show that plaintiffs' lawsuit was brought "solely" in response to an act of government participation because defendants could not show that the statements in the letter were true. Plaintiffs submitted the affidavit of their attorney, John Xydakis, who attached an e-mail from Tom Shaer, deputy assessor for communications at the office of the Cook County Assessor, to someone named "Katie," which detailed an investigation by the assessor's office into the specific claims in Mr. Grider's letter, concluding that those claims were "without merit," that there was no evidence of an "erroneous exemptions 'scheme' " (internal quotation marks omitted), and that "[a] detailed examination of [the relevant property identification numbers] and other information show[ed] very, very substantial compliance."

¶ 13 Although each side asked the circuit court to strike the opposing parties' affidavits as conclusory, lacking a proper foundation, or because they contradicted prior sworn deposition testimony, there is no indication in the record that the circuit court ruled on these requests.

¶ 14 Following argument, the circuit court denied defendants' motion, finding that although Mr. Grider's letter was sent in furtherance of his right to participate in and obtain favorable government action, "[t]here [wa]s at least a question of fact" regarding the truth or falsity of the statements in that letter. As such, defendants had failed to demonstrate that plaintiffs' claims were meritless, *i.e.*, that they were "solely based on, related to, or in response [to the letter]."

¶ 15                                    JURISDICTION

¶ 16 Plaintiffs contend that we lack jurisdiction over this appeal. They argue that, by raising the affirmative defense of privilege as a reason why plaintiffs' claims lack merit under the Act, defendants are using this appeal to improperly obtain interlocutory review of the circuit court's order denying a later motion that defendants filed seeking summary judgment on the basis of privilege. This argument is not jurisdictional; it relates only to the proper scope of what may be considered when a court decides whether a defendant has met its initial burden under the Act, an issue we discuss in more detail below.

¶ 17 Our jurisdiction over this appeal is straightforward. Defendants filed their initial motion for summary judgment based on the Act on June 23, 2017. Although the Act requires that "a hearing and decision on [such a] motion must occur within 90 days after notice of the motion is given to the respondent" (735 ILCS 110/20(a) (West 2016)), and the record indicates that the circuit court did not rule until August 18, 2017, our supreme court has held that failure to comply with the 90-day requirement does not cause the circuit court to lose jurisdiction (*Sandholm v. Kuecker*, 2012 IL 111443, ¶ 67). On September 18, 2017, defendants timely filed a petition for leave to appeal from the court's August 18 order pursuant to Illinois Supreme Court Rule 306(a)(9), which provides for discretionary interlocutory appeals from "order[s] of the circuit court denying [ ] motion[s] to dispose under the Citizen Participation Act (735 ILCS 110/1 *et seq.*)." Ill. S. Ct. R. 306(a)(9) (eff. July 1, 2017). We granted defendants' petition on October 18, 2017, and accordingly have jurisdiction over this appeal.

- 4 -

ANALYSIS

Summary judgment is appropriate where, construed liberally in favor of the party opposing judgment (*Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25), "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (735 ILCS 5/2-1005(c) (West 2014)). Although summary judgment is "encouraged as an aid in the expeditious disposition of a lawsuit," it is "a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). We review a circuit court's grant or denial of summary judgment *de novo* (*Doria v. Village of Downers Grove*, 397 Ill. App. 3d 752, 756 (2009)) and may affirm the judgment of the circuit court "on any basis appearing in the record" (*Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 21).

As an initial matter, we clarify the scope of this appeal and what portions of the record will be considered. Defendants petitioned this court for leave to appeal from the circuit court's denial of their initial motion for summary judgment, based solely on the Act. In connection with their petition, defendants filed a Rule 328 (Ill. S. Ct. R. 328 (eff. July 1, 2017)) supporting record consisting of the various complaints in this matter, the briefing on their initial motion for summary judgment, and the circuit court's order denying that motion. Defendants were later granted leave to supplement the record with a transcript of the hearing on their initial motion for summary judgment. These are the only documents relevant to our review in this case.

In their opposition to defendants' petition for leave to appeal plaintiffs attached their own Rule 328 supporting record, consisting of the briefing on a *second* motion for summary judgment filed by defendants, "Based Upon Privilege, Immunities, and Other Defenses." This second motion was not filed until August 11, 2017, less than a week before the court's denial of the first motion, and was not fully briefed or ruled on for another month, well after defendants' petition for leave to appeal the denial of their first motion was filed in this court. It is not any part of this interlocutory appeal. The documents in the defendants' supporting record are not relevant and will also not be considered because "the scope of appellate review of a summary judgment motion is limited to the record as it existed when the circuit court ruled." *Campos v. Campos*, 342 Ill. App. 3d 1053, 1066 (2003).

In assessing whether defendants' initial motion for summary judgment was properly denied, we look first to the burden-shifting requirements of the Citizen Participation Act and how those requirements have been construed by our supreme court. We then consider whether defendants made the necessary threshold showings under the Act, including a showing that plaintiffs' claims lacked merit.

### A. The Citizen Participation Act and *Sandholm*

The Act (735 ILCS 110/1 *et seq.* (West 2014)) was enacted in 2007 to deter SLAPP litigation—"lawsuits aimed at preventing citizens from exercising their political rights or punishing those who have done so." (Internal quotation marks omitted.) *Sandholm*, 2012 IL 111443, ¶ 33. It was meant to "strike a balance between the rights of persons to file lawsuits for injury" on the one hand, "and the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government" and furthermore "to protect and

encourage public participation in government to the maximum extent permitted by law." 735 ILCS 110/5 (West 2014). The Act provides that "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." *Id.* § 15. The Act provides for summary dismissal, expedited appellate review, and recovery of attorney fees for the "SLAPPed" party. *Sandholm*, 2012 IL 111443, ¶ 35; 735 ILCS 110/20(a), 25 (West 2014). It is to be "construed liberally to effectuate its purposes and intent fully." 735 ILCS 110/30(b) (West 2014).

¶ 25 Under the Act, a defendant may move "to dispose of a claim in a judicial proceeding" on the grounds that (1) he engaged in an act "in furtherance of [his] rights of petition, speech, association, or to otherwise participate in government" and (2) the plaintiff's claim "is based on, relates to, or is in response to" that protected act of citizen participation. *Id.* § 15. The burden then shifts to the plaintiff to produce "clear and convincing evidence" that the acts of the moving party were a sham, *i.e.*, that they were "not genuinely aimed at procuring favorable government action." *Id.* §§ 15, 20(c).

¶ 26 Plaintiffs do not appear to dispute that Mr. Grider's act of sending his June 2015 letter to local government officials was an act of government participation. The parties' arguments instead center on whether defendants met their additional burden under section 15 of the Act of showing that plaintiffs' lawsuit was "based on, relat[ed] to, or [wa]s in response to" that protected act (*id.* § 15). If defendants did, the burden shifted to plaintiffs; if they did not, defendants' motion for summary judgment was properly denied.

¶ 27 In *Sandholm*, our supreme court construed the language of section 15 narrowly, holding that a defendant seeking the act's protections must demonstrate that the plaintiff's suit is "*solely* based on, relating to, or in response to" the defendant's act of protected citizen participation. (Emphasis in original.) *Sandholm*, 2012 IL 111443, ¶ 45. The court explained that "SLAPPs are, by definition, meritless," and a "SLAPP plaintiff's goals are achieved through the ancillary effects of the lawsuit itself ***, not through an adjudication on the merits." (Internal quotation marks omitted.) *Id.* ¶¶ 34-35. Thus, "where a plaintiff files suit genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants, the lawsuit is not *solely* based on defendant's rights of petition, speech, association, or participation in government" and will "not be subject to dismissal under the Act." (Emphasis added.) *Id.* ¶ 45. The court noted that this construction would "allow[ ] a court to identify meritless SLAPP suits subject to the Act" and would "ameliorate the 'particular danger inherent in anti-SLAPP statutes *** that when constructed or construed too broadly in protecting the rights of defendants, they may impose a counteractive chilling effect on prospective plaintiffs' own rights to seek redress from the courts for injuries suffered.' " *Id.* ¶ 48 (quoting Mark J. Sobczak, Comment, *SLAPPed in Illinois: The Scope and Applicability of the Illinois Citizen Participation Act*, 28 N. Ill. U.L. Rev. 559, 575 (2008)).

¶ 28 The plaintiff in *Sandholm* was a high school athletics director and basketball coach who alleged that a group of individuals had launched an extensive media and letter-writing campaign to have him removed as coach due to their disagreement with him over his coaching style. *Id.* ¶¶ 3-5. The court concluded that the plaintiff's suit bore all the hallmarks of a genuine effort to seek damages for personal harm to his reputation from the defendants' alleged defamatory and tortious acts, and that the defendants had failed to show that it was a meritless suit filed solely to stifle defendants' right to engage in protected petitioning activities. *Id.* ¶ 57.

Notably, the *Sandholm* court recognized that action taken by a defendant might be both tortious *and* in furtherance an act of protected citizen participation. *Id.* ¶ 53 ("It is entirely possible that defendants could spread malicious lies about an individual while in the course of genuinely petitioning the government for a favorable result."). It made clear that, in such cases, the Act does not apply. *Id.* ¶ 51.

¶ 29    This court has acknowledged the tension between the concept of "immun[ity] from liability" referenced in the Act (735 ILCS 110/15 (West 2014)) and the requirement, following *Sandholm*, that a defendant must demonstrate that a plaintiff's claims are meritless before the Act will be found to apply. *Midwest REM Enterprises, Inc. v. Noonan*, 2015 IL App (1st) 132488, ¶ 61. Under this construction, what the Act provides seems less like true immunity from suit and more like an expedited procedure for reaching the merits of a claim. But we are bound by the clear holding in *Sandholm* that the Act applies only to "meritless" claims. *Sandholm*, 2012 IL 111443, ¶ 45.

¶ 30    Defendants agree that it was their burden to show that plaintiffs' claims lacked merit and contend that the circuit court erred in finding they failed to do so. Defendants argue that plaintiffs' defamation claims are meritless because both absolute and qualified privileges applied to the statements in Mr. Grider's June 2015 letter and that plaintiffs' false light claims are meritless because plaintiffs failed to establish actual malice, a necessary element of that claim. We turn first to plaintiffs' defamation claims.

¶ 31                    B. Whether Plaintiffs' Defamation Claims Lack Merit

¶ 32    "The essential elements of a defamation claim are: (1) that the defendant made a false statement about the plaintiff; (2) that the defendant made an unprivileged publication of that statement to a third party; and (3) that the publication caused damages." *Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 41. Certain types of statements constitute defamation *per se*, for which a plaintiff need not prove damages. *Id.* These include, among others, statements "that impute a person has committed a crime," statements "that impute a person is unable to perform or lacks integrity in performing her or his employment duties," and statements "that impute a person lacks ability or otherwise prejudices that person in her or his profession." (Internal quotation marks omitted.) *Id.*

¶ 33    On appeal, defendants do not include any argument, as they did in the circuit court, that the statements in Mr. Grider's letter were true. Defendants instead argue only that plaintiffs' defamation claims were "meritless" under the Act because both a qualified and an absolute privilege applied to the statements in Mr. Grider's letter.

¶ 34    Privilege, whether absolute or qualified, is an affirmative defense, not an element of a plaintiff's claim for defamation. As this court recently explained in *Garrido*, due to a "quirk of defamation law," many cases "misleading[ly]" state that an unprivileged publication of the defamatory statement is an element of the claim, when in fact a plaintiff need only prove lack of privilege "in the event that the defendant raises that particular affirmative defense." *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶ 25 n.2 (citing *Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 870 (1995), and Restatement (Second) of Torts § 613(2) (1977)); see also *Blair v. Walker*, 64 Ill. 2d 1, 5 (1976) (noting that "[t]he defense of privilege" has long been recognized in tort cases).

¶ 35    The *Garrido* court went on to conclude that the existence of a valid affirmative defense is not something a court should consider when assessing whether a plaintiff's claim is "meritless"

for purposes of the Act. *Garrido*, 2013 IL App (1st) 120466, ¶¶ 26-27. It explained that, in its view, although "[t]he term 'meritless' is often used loosely to describe any unsuccessful legal claim or theory, *** in the context of a SLAPP it is a term of art and means something more." *Id.* ¶ 20. According to *Garrido*, a claim is "meritless" under the Act only "if a movant disproves some essential element of the nonmovant's claim." *Id.* ¶ 19.

¶ 36    The defendants in *Garrido*, like defendants here, argued that they were not liable for defamation because their statements were privileged. *Id.* ¶ 25. But the court held that this did not render the plaintiffs' claims "meritless" under the Act, because "[a] successful affirmative defense merely 'avoid[s] the legal effect of or defeat[s] the cause of action set forth in the complaint' " and in fact "rests upon the idea that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." (Emphasis and internal quotation marks omitted.) *Id.* ¶¶ 26-27 (quoting 735 ILCS 5/2-613(d) (West 2010)).

¶ 37    Other panels of this court have restated the holding in *Garrido* without providing any additional analysis of the issue. See *Midwest REM Enterprises*, 2015 IL App (1st) 132488, ¶ 60 (noting that "[t]o show the complaint lacks merit, the defendant must 'disprov[e] some essential element of plaintiff's *prima facie* case' " (quoting *Garrido*, 2013 IL App (1st) 120466, ¶ 28)); *Goral*, 2014 IL App (1st) 133236, ¶ 40 (citing *Garrido*, 2013 IL App (1st) 120466, ¶ 28, for the proposition that "the existence of an affirmative defense does not establish that a plaintiff's claim is 'meritless' under the second prong [of the Act]"). The circuit court in this case, though it did not cite the case by name, seems to have similarly relied on *Garrido* in ruling on defendants' motion, stating: "A defendant cannot fulfill the meritless prong of the second requirement [of the Act] by asserting an affirmative defense. Instead the Courts must look to examine the plaintiff's defamation claim and the allegations contained within the complaint."

¶ 38    In their reply brief, defendants argue that *Garrido* is distinguishable from this case on the basis that, in *Garrido*, protection under the Act was sought through a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)), and not, as here, through a motion for summary judgment. We reject this distinction as irrelevant. As this court noted in *August v. Hanlon*, 2012 IL App (2d) 111252, ¶ 23, "[t]he Act applies to '*any* motion to dispose of a claim in a judicial proceeding' " (emphasis in original) (quoting 735 ILCS 110/15 (West 2010)), and "for purposes of our analysis, any distinction between a motion for summary judgment and a motion to dismiss under section 2-619(a)(9) is immaterial" (*id.* ¶ 24).

¶ 39    We nevertheless question whether the distinction in *Garrido*—that a claim is meritless for purposes of the Act only if an essential element of the plaintiff's claim is disproved and not if a valid affirmative defense is asserted—flows inexorably from our supreme court's decision in *Sandholm*. Notably, the *Garrido* court cited no authority for its conclusion that the word "meritless" is a term of art having a special meaning in the context of a motion under the Act. See *Garrido*, 2013 IL App (1st) 120466, ¶ 20. Certainly a claim is meritless if an essential element of the plaintiff's *prima facie* case is disproved, but is it not equally meritless if it is doomed to fail because it is subject to an obvious affirmative defense?

¶ 40    We need not resolve that question here, however. We conclude that, even if an affirmative defense—like privilege—can provide a basis for dismissal of a claim under the Act, in this case defendants failed to establish that a privilege applied to Mr. Grider's comments.

¶ 41    As our supreme court explained in *Blair*, 64 Ill. 2d at 5, "Privileged communications are generally divided into those which are absolutely privileged and those which are only qualifiedly privileged." An absolute privilege "cannot be overcome by a showing of improper motivation or knowledge of falsity," whereas a qualified privilege "is conditional upon the good faith and reasonable behavior of the defendant." *Id.* at 6. The defendants argue that both absolute and qualified privileges apply to Mr. Grider's comments.

¶ 42    Because it is such a "severe restriction" on a plaintiff's ability to seek recourse for acts of defamation, absolute privilege has historically been "narrowly applied to legislative, judicial and certain military officers and proceedings" and "high executive officials." *Id.*; see also Restatement (Second) of Torts § 591(b) (1977) (noting that, at the state level, application of the privilege is limited to the "governor or other superior executive officer of a state"); Restatement (Second) of Torts Appendix § 591, Reporter's Note, at 21 (1981) (explaining that "[t]he majority of the state courts have declined to extend the absolute privilege beyond the superior state officers and have recognized as to other officers only a conditional privilege"). This is in keeping with society's interest in "the unfettered discharge of public business" that such proceedings entail and such individuals are charged with. (Internal quotation marks omitted.) *Blair*, 64 Ill. 2d at 6. We agree with plaintiffs that Mr. Grider's level of executive authority cannot be compared to that of other public officials, for whom Illinois courts have recognized an absolute privilege. See, *e.g.*, *id.* at 7 (extending the privilege to statements made by the governor); *Geick v. Kay*, 236 Ill. App. 3d 868, 876 (1992) (extending it to statements made by mayors of Illinois municipalities).

¶ 43    Mr. Grider's duties are set out in the Property Tax Code, which provides that township assessors are "ex-officio deputy assessors" charged with making property assessments in the townships where they are elected, but that they "shall be under the direction and control of the county assessor in the same manner as other deputy assessors." 35 ILCS 200/2-55 (West 2014). At his deposition, Mr. Grider agreed that, as a township assessor, he has no authority to reassess property, issue exemptions, or issue certificates of error. Defendants have simply not shown that Mr. Grider exercises the high level of executive discretion necessary for a finding that statements made within the scope of his duties are absolutely privileged. See *Catalano v. Pechous*, 83 Ill. 2d 146, 156 (1980) (concluding that, although a city clerk was an officer of the government of Berwyn, no privilege attached to his remarks because the ordinances governing his position demonstrated that his relevant duties were ministerial in nature).

¶ 44    The case defendants primarily rely on, *Novoselsky v. Brown*, 822 F.3d 342 (7th Cir. 2016), is not controlling and is also distinguishable. There, the Seventh Circuit recently concluded, despite the fact that her position "does not entail the same level of executive authority as a governor or mayor," that Illinois courts would hold that statements made by Dorothy Brown, as the Clerk of the Circuit Court of Cook County, enjoy the same executive privilege "insofar as she communicate[s them] within the scope of [her] functions and duties." *Id.* at 350. Of course, as a federal case, this is not controlling. Even if it were, Mr. Grider's status, as a deputy assessor, is simply not equivalent to Brown's.

¶ 45    Defendants alternatively argue that a qualified privilege applied to the statements Mr. Grider made in his 2015 letter. "A qualified privilege exists where a communication that might be defamatory is not actionable because of the *occasion* on which or the circumstances under which it was made." (Emphasis added.) *Cianci v. Pettibone Corp.*, 298 Ill. App. 3d 419, 425 (1998). Three such occasions are recognized: "(1) situations that involve some interest of the

person who publishes the defamatory matter; (2) situations that involve some interest of the person to whom the matter is published or of some third person; and (3) situations that involve a recognized interest of the public." *Id.* at 426. A qualified privilege is destroyed, however, where it has been abused. *Id.* "An abuse of the privilege may consist of 'any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties.' " *Id.* (quoting *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16, 30 (1993)); see also Restatement (Second) of Torts § 599 cmt. a (1977) (noting a qualified privilege "may be abused *** because the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular privilege"). "[T]he issue of whether a qualified privilege exists [is] a question of law for the court, and the issue of whether the privilege was abused [is] a question of fact for the jury." *Kuwik*, 156 Ill. 2d at 25.

¶ 46 Defendants argue that the "undisputed evidence demonstrates that Grider's statements fall under two of the three recognized situations" in which a qualified privilege arises: "the interests of third parties and a recognized interest of the public." We agree with plaintiffs, however, that even if such a privilege arose, there is at least a question of material fact regarding whether Mr. Grider abused the privilege by sending his 2015 letter to parties not reasonably believed to be necessary to accomplish any proper purpose. At his deposition, Mr. Grider admitted that he additionally sent the letter to the Better Government Association, the mayor of Burbank, and to "some media outlets, because [he] was trying to get some action or reaction for the transgressions *** that took place." Defendants make no argument defending the reasonableness or necessity of sending the letter to these recipients in order to accomplish any reform. Defendants' casual dismissal of plaintiff's arguments as "Monday morning quarterbacking" does not persuade us that reversal is warranted.

¶ 47 In sum, we agree with the circuit court that defendants failed to demonstrate that plaintiffs' defamation claims were meritless. We need not consider the parties' arguments about whether plaintiffs' claims were also retaliatory. Under *Sandholm*, a lawsuit is not a SLAPP if it has potential merit, even if the plaintiff's motivation in bringing it was, in part, retaliatory. *Sandholm*, 2012 IL 111443, ¶ 51. Because defendants failed to demonstrate that plaintiffs defamation claims were meritless, the burden never shifted to plaintiffs to demonstrate by clear and convincing evidence that the letter Mr. Grider published was not genuinely aimed at procuring favorable government action.

¶ 48 We also need not consider defendants' argument on appeal that no proper foundation was laid for plaintiffs' introduction of the e-mail from Mr. Shaer at the office of the Cook County Assessor concluding, after an apparent investigation by that office, that the statements in Mr. Grider's letter were substantially false. As an initial matter, defendants failed to preserve this issue when they failed to secure a ruling on their motion to strike Mr. Xydakis's affidavit attaching the exhibit. See *Intercontinental Parts, Inc. v. Caterpillar, Inc.*, 260 Ill. App. 3d 1085, 1090 (1994) ("When a party moves to strike an affidavit which has been filed in support of a motion for summary judgment, it is that party's duty to bring his motion to the attention of the trial court and to get a ruling on the motion, and the failure to obtain such a ruling will operate as a waiver [forfeiture] of the objections to the affidavit."). It also does not matter since the affidavit went to rebut defendants' argument that the statements Mr. Grider made were true and, on appeal, the defendants are no longer pursuing that argument.

¶ 49                     C. Whether Plaintiffs' False Light Claims Lack Merit

¶ 50         We separately consider whether defendants demonstrated that plaintiffs' claims for false light were meritless. See 735 ILCS 110/15 (West 2014) (discussing when "a claim" may be disposed of under to the Act). The three elements of this cause of action are that "(1) plaintiff was placed in a false light before the public as a result of defendant's actions; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice, with knowledge of or reckless disregard for the falsity of the statements." *Wynne v. Loyola University of Chicago*, 318 Ill. App. 3d 443, 454 (2000). Defendants argue that plaintiffs' false light claims are meritless because "[t]he undisputed facts presented offer no evidence that [Mr.] Grider acted with the requisite intent when he sent the letter."

¶ 51         A defendant who moves for summary judgment has the initial burden of production, which can be met by either (1) affirmatively introducing evidence that, if uncontroverted, would disprove the plaintiff's case or (2) establishing that a lack of sufficient evidence will prevent the plaintiff from proving an essential element of the cause of action. *Hall v. Flowers*, 343 Ill. App. 3d 462, 469-70 (2003). Where the defendant satisfies this initial burden of production, the burden then shifts to the plaintiff to show a factual basis to support the elements of his claim. *Id.* at 470.

¶ 52         Defendants' argument appears to be that, based on Mr. Grider's own self-serving conclusion, made during his deposition testimony, that he acted without malice in sending the June 2015 letter, the burden of production shifted to plaintiffs to show a factual basis for their claim of malicious intent. We disagree. "When determining whether factual issues exist for purposes of a summary judgment motion, we must ignore personal conclusions, opinions and self-serving statements and consider only facts admissible in evidence." (Internal quotation marks omitted.) *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1029-31 (2001) (finding—the defendant's own assertions to the contrary—that the plaintiff raised a triable issue of fact regarding whether the defendant acted recklessly or with "actual malice"); see also *Perfection Corp. v. Lochinvar Corp.*, 349 Ill. App. 3d 738, 744 (2004) ("[u]nsupported assertions, opinions, and self-serving or conclusory statements made in deposition testimony are not admissible evidence upon review of a summary judgment motion").

¶ 53         Here, plaintiffs alleged that they and Mr. Grider were political rivals. At his deposition Mr. Grider acknowledged that, in all of his time as township assessor, this was the only investigation he personally undertook regarding illegal property tax exemptions or other misconduct, noting that normally, when he receives tips regarding such conduct from taxpayers, he forwards them on to the office of the Cook County Assessor through that office's whistle-blower website. We further note that a fact finder could conclude that the language used by Mr. Grider in his 2015 letter at times crosses the line between a dispassionate recitation of the facts into name-calling, referring to plaintiffs as an "ethically challenged group" who "used their insider status to scratch their own backs" and a "tax cheating posse" who "bled taxpayers through illegal exemptions and inside-access to property tax appeals." On this record, we cannot say that Mr. Grider's own testimony insisting he did not act with actual malice when he sent the letter is sufficient to demonstrate the lack of a question of material fact on this element.

## CONCLUSION

For the above reasons we affirm the circuit court's denial of defendants' motion for summary judgment under the Act. Defendants were not entitled to the protections afforded by the Act because they failed to show that plaintiff's claims lacked merit, such that they were filed *solely* in response to a protected act of citizen participation.

Affirmed.